## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Amaala Jones-Bey                   :
       Next Friend and Mother of Daughter    :
       Z.J.-B. Individually                    :
       And as the Personal Representative    :
       and Administrator of               :
THE ESTATE OF KARON HYLTON       :
Estate No. 2021 ADM 001403           :
Address: 1629 K Street, NW            :
DC  20020                        :
                                :
          Plaintiff                 :

v.                                : Civil Action No. # 21-cv-02674 JMC

District of Columbia                 :
a municipal corporation             :
441 Fourth Street, NW             :
Washington, DC  20001           :
                                :
        Mayor Muriel Bowser          :
        Office of Mayor              :
        1350 Pennsylvania Avenue, N.W.   :
                                :
        Tonia Robinson, designee      :
                                :
        Office of the Attorney General     :
        Karl A. Racine               :
        District of Columbia           :
        441 4th Street, N.W.           :
        Washington, DC  20001       :
                                :
          and                   :
                                :
MPD DC Patrol Officer 1 – TERRENCE SUTTON
         Police Officer Driver        :
                                :
MPD DC Patrol Officer 2 - Carlos Tejera # 10376:
         Police Officer Passenger     :
                                :
MPD DC Patrol Officer 3 - Ahmed Al-Shrawl # 11756:
         Police Officer Passenger     :
                                :

1

MPD DC Patrol Officer 4 – Cory Novick # 11594 :
    Police Officer Passenger

MPD DC Patrol Officer 5 – Andrew Zabavsky     :
    Driver of Patrol Car II          :


## TABLE OF CONTENTS

Introduction                                pp. 3 - 5

Parties                                     pp. 5 - 6

Jurisdiction                                pp. 6 -7

Explanation of Facts Common to All          pp. 7 - 8

Facts Common to All                         pp  8 - 17.

Damages                                     pp. 17 - 18

Counts                                      pp. 18 - 60

Constitutional Claims – Wrongful Death Counts

I.      Fourth Amendment:  Unreasonable Seizure by Excessive Force pp. 18 - 20
II.     Fifth Amendment: Violation of Due Process pp. 20 - 22
III.    § 1983 *Monell* Claim for Violations of Fourth & Fifth Amendment Rights pp. 22-27

State Law Claims-Wrongful Death Counts

IV.   Negligence and Negligence Per Se pp. 27 - 29
V.    Common Law Assault pp. 29 - 30
VI.   Common Law Battery pp. 30 – 32
VII. Statutory Assault and Battery – DC Code sec. 5 -123.02, pp. 32 - 34
VIII.   Negligent Infliction of Emotional Distress pp.  34 - 35
IX. Intentional Infliction of Emotional Distress pp. 35 - 37
X.   Negligence in Hiring, Retention, Training and Supervision pp.37 - 39

Constitutional Claims – Survival Counts p. 39

XI. Fourth Amendment:  Unreasonable Seizure by Excessive Force pp. 39 - 42
XII. Fifth Amendment: Violation of Due Process pp. 42 - 44
XIII. 1983 *Monell* Claim for Violations of Fourth and Fifth Amendment Rights pp. 44-48

State Law Claims- Survival Counts

XIV.   Negligence and Negligence Per Se pp.  48.- 50
XV.    Assault pp. 50 - 52
XVI.   Battery pp. 52 - 54
XVII.  Negligent Infliction of Emotional Distress   pp. 54 - 55
XVIII. Intentional Infliction of Emotional Distress  pp. 55 - 57
IXX.   Negligence in Hiring, Retention, Training and Supervision pp. 57 – 60
JURY DEMAND – p. 60

## INTRODUCTION

1. This lawsuit, brought under the Civil Rights Act 42 USC 1983, seeks money damages for the violations of the rights of Karon Hylton, deceased, under the Fourth and Fifth Amendments to the Constitution for unreasonable seizure/excessive force and violations of Due Process which shock the conscience, as well as claims brought under the laws of the District of Columbia, including common law claims for negligence, negligence per se, assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress under the District of Columbia's Wrongful Death and Survivorship Acts.  On or about November 11, 2020, The District of Columbia, Office of Risk Management acknowledged "receipt of Plaintiff's correspondence notifying our office of a claim against the District of Columbia" pursuant to DC Code § 12-309.

2. It is alleged that Defendant, Terrence Sutton, (hereinafter "Sutton") a District of Columbia police officer, along with 3 participant passenger police officers whose names are  Carlos Tejera # 10376,  (hereinafter "Tejera"),  Ahmed Al-Shrawl # 11756, (hereinafter "Al-Shrawl")  and Cory Novick # 11594,

(hereinafter "Novick") occupants of the DC MPD unmarked police car, killed Karon Hylton, Jr., by intentionally and/or negligently using an MPD DC police vehicle to unlawfully chase Karon Hylton who was driving a legal MOPED, of the type of which is available to be lawfully rented on the Streets of the District of Columbia, and known by the name REVEL.

3. It is further alleged that Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick, and Zabavsky Defendants racially profiled, harassed and intimidated Mr. Hylton consistent with the pattern and practice that is routinely allowed in the ranks of its police officers; which behavior gains traction because of the deliberate indifference of the MPD DC Police Force Hierarchy in their failure to supervise said officers who threaten and do indeed use excessive and deadly force, i.e. the use of an MPD vehicle to target and threatened a two wheeled motor by use of excessive force in violation of the Fourth Amendment and violations of Due Process of the Fifth Amendment to the Constitution in a manner that is outrageous and shocks the conscience.

4. It is alleged that the Supervisors of the Metropolitan Police Department (MPD) and those responsible for investigating the instant collision, including these 4 officers mentioned above, individually and in their personal capacity, acted with reckless, deliberate and callous indifference to violate the rights of Hylton under 42 USC 1983 and the Fourth and Fifth Amendments of the Constitution.

5. It is alleged that Andrew Zahavsky, a Lieutenant in the DC MPD, was driving and chasing Karon Hylton and actually took the lead in the unlawful

chase at one point in violation of common law principles, intentional tort principles and violations of GO OPS 301.03.

6. It is alleged that Andrew Zahavsky and Terrence Sutton engaged in a cover-up to conceal their wrongful and illegal acts of numerous violations of GO OPS 301.03, by destroying evidence, not taking and not preserving evidence and not immediately calling Major Crash Investigations Unit to the scene so that Major Crash could properly prepare a crash report, all to escape liability and culpability for their wrongful acts and tortious behavior. It is alleged by Plaintiffs, that the District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his daughter via her Mother, Personal Representative appointed by the DC Probate Division of the DC Superior Court and next friend, Amaala Jones-Bey.

7. It is alleged that Terrence Sutton, Andrew Zabavsky, Carlos Tejera # 10376, (hereinafter "Tejera"), Ahmed Al-Shrawl # 11756, (hereinafter "Al-Shrawl)" and Cory Novick # 11594, did pursue in two respective police vehicles, one marked and the other unmarked, Karon Hylton with conscious disregard for an extreme risk of death or serious bodily injury to Karon Hylton in violation of GO OPS 301.03 as well as violations of the common law of intentional torts, e.g. assault and battery and negligence.

PARTIES

8. Z.J.-B., daughter, by her next friend and mother, Amaala Jones-Bey, and the Personal Representative of the Estate of Karon Hylton, is the child of

Karon Hylton and is the sole heir of the Estate of Karon Hylton. At all times material hereto, Decedent Karon Hylton was an unarmed and unmarried adult male living in the District of Columbia.

9. Z.J.-B. by her mother and next friend of the child of Karon Hylton, i.e. Amaala Jones-Bey and also duly appointed as the Personal Representative ("PR") of the Estate of Karon Hylton by the Probate Division of this Superior Court.

10. Karon Hylton is the Decedent who was killed when Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Andrew Zabavsky chased in an unlawful vehicle pursuit Karon Hylton in violation of the General Order for the Metropolitan Police Department "Vehicle Pursuits, GO-OPS – 301.03.

JURISDICTION

11. Subject matter jurisdiction is proper under 28 USC sec. 1331 and 1343 as this suit arises under the Constitution and laws of the United States. Pendant jurisdiction over the claims arising under District of Columbia law (State law claims) is proper under 28 USC sec. 1367.

12. Personal Jurisdiction is proper as Plaintiffs were citizens of the District of Columbia at the time of the collision and Defendant District of Columbia and its officers are and were employed by the District of Columbia, (notwithstanding being on administrative leave) as members of the District of Columbia Police Department whose work of the Police Force is focused on police matters located within the District of Columbia.

13. Venue is proper under 28 USC sec. 1391 as all material and relevant acts and inactions occurred within the District of Columbia, and all material witnesses and evidence may be found within the District or nearby.

14. The actions of which Plaintiff complains violated Decedent's constitutionally protected rights and were taken under the color of District of Columbia law and/or policy, procedure, custom or usage and may be redressed pursuant to 42 USC 1983 and 1986.

15. Defendants violated Decedent's constitutionally protected rights under the Fourth and Fifth Amendments of the Constitution of the United States, and the laws of the United States, to be free from unreasonable search and seizure, unreasonable excessive force, to be free from deprivation of life or liberty without due process of law, and the right to be free from unreasonable government interference and obstruction while traveling on the roads of the United States and more particularly, the District of Columbia.

16. Defendants Carlos Tejera # 10376, (hereinafter "Tejera"), Ahmed Al-Shrawl # 11756, (hereinafter "Ahmed Al-Shawl") and Cory Novick # 11594, Terrence Sutton and Andrew Zabavsky racially profiled and targeted and caused the death of Karon Hylton by their conscious disregard for an extreme risk of death or serious bodily injury to Karon Hylton.

## EXPLANATION REGARDING FACTS COMMON TO ALL

There is necessarily duplication in this Complaint, particularly because Plaintiff is required to file separately his Counts for Wrongful Death and Survival.

Furthermore, there is often similarity of facts between the Counts such as "Assault and Battery", "Negligence and Gross Negligence", "Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress" and there is much factual overlapping in the Counts related to "Monell Violations" and "Negligence in Hiring, Retention, Training and Supervision." Thus, Plaintiff is setting forth in Facts Common to All facts that should be referenced and incorporated in the appropriate Counts without having to unnecessarily repeat and increase the size of this Complaint. Should there be any questions regarding which facts apply to which Counts, Plaintiff will request leave of Court to clarify which facts are referred by reference to the corresponding Count. Unless otherwise stated, all appropriate facts listed herein should be deemed incorporated by reference to the appropriate Counts.

## FACTS COMMON TO ALL

17. On or about October 23, 2020, Officer Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky were police officers of the District of Columbia, acting under the color of law, and pursuant to the defacto practices and procedures of Defendant DC, and with deliberate indifference to the known fact that DC Police Officers racially profile and target black motorbike/dirtbike drivers/riders in a manner that results in DC MPD Police Officers chasing and knocking DC dirt-bikers and motor-bikers, including MOPED riders off their motorbikes; and pursue at high and dangerous speeds motorbike riders like in this instance, Plaintiff Karon Hylton while he was riding a legal Revel MOPED, was not stopped for a Terry Stop nor

under arrest nor was he speeding at the time the chase was instigated by said 5 officers, as he was innocently looking for the keys to his car that he had lost.

18. The District of Columbia and these officers knew or should have known that said practice of chasing, targeting and knocking motorbike riders off their motorbikes are tantamount to deadly force.

19. Even Mayor Bowser concedes that such chasing is a violation of DC Official Policy not to chase motorbikes without explicit approval by the Police Department and is tantamount to explicit deadly force for obvious reasons. "It looks like our police were following the MOPED that Karon was driving. We have very clear policies about no chasing. It should be obvious by now, why, because chases can be dangerous." Muriel Bowser statement to the Press on October 29, 2020. All of these practices violate, Karon Hylton's constitutional rights under the Fourth and Fifth Amendments, as well as assaulting and battering him causing extreme infliction of emotional distress.

20. On or about October 23, 2020, Karon Hylton, borrowed a Revel MOPED from Reginald "Reggie" Ruffin who had legally rented the legally available Revel MOPED.

21. Reggie Ruffin and Karon Hylton had been friends since elementary school.

22. Karon Hylton road the MOPED for 5 to 10 minutes.

23. While riding the MOPED, Karon Hylton noticed that he had lost his keys to his car.

24. Karon Hylton returned to his car to find his keys.

25. Reggie Ruffin helped Karon Hylton look for his keys at Karon Hylton's car.

26. Karon Hylton did not find his keys at the car.

27. Karon Hylton asked Mr. Ruffin if he could re-borrow the MOPED to retrace his steps to see if he could find his keys.

28. Mr. Ruffin granted Mr. Hylton's request to let Mr. Hylton use the MOPED to retrace the path the MOPED first took; so Karon Hylton could find his keys.

29. Mr. Hylton borrowed the MOPED that Mr. Ruffin had rented to retrace his steps to find his keys.

30. As Mr. Hylton positioned the MOPED to drive off the block, an unmarked police vehicle pulled up to the location where Mr. Hylton was talking to Mr. Ruffin.

31. Officer Terrence Sutton called out Karon Hylton's name by saying, "Hey, Karon" while Karon Hylton was in the presence of his childhood friend, Reginald Ruffin.

32. Karon Hylton responded to Officer Sutton by saying, "What do you want?"

33. Officer Sutton did not respond to Mr. Hylton's question, "What do you want?"

34. Without any further conversation from Officer Sutton, Mr. Hylton started to drive off the block.

35. Karon Hylton didn't even get off the block and the vehicle driven by Officer Sutton that had 3 other police passengers began to chase Karon Hylton without any permission from District of Columbia supervisors as is recommended by the MPD's GO-OPS 301.03.

36. Because Mr. Ruffin has witnessed how police officers target and knock black bikers off their motorbikes in general and Officer Sutton in particular, he picked up his pedal bike and tried to follow the chase while peddling on his bike.

37. Mr. Ruffin can be seen on the police video released by the DC MPD coming up the alley, laying down his pedal bike and upon witnessing the effects of the collision and seeing his friend on the street as a result of the collision, shouting, "What the fuck?"!

38. When Mr. Hylton was leaving the block no one had put Karon Hylton under arrest.

39. Mr. Hylton proceeded to leave the block as no one had put him under arrest or showed an interest in detaining him as in a "Terry Stop".

40. Mr. Ruffin frequently rents MOPEDS and lets his friends ride them.

41. Most of the MOPED riders do not wear the helmet that is available because the MOPED users do not know if the previous MOPED user had COVID-19.

42. Thus, it was not unusual for the riders that Mr. Ruffin let borrow the MOPEDS not to wear helmets. It is Mr. Ruffin's view that very few MOPED riders voluntarily chose to wear previously used helmets

43. As Mr. Hylton road off on the MOPED, Officer Sutton gave chased.

44. Mr. Ruffin was worried for his friend Karon as Officer Sutton, as well as other officers in the area are known for chasing black bikers on motorbikes.

45. Karon Hylton's brother Robbie had been chased on his motorbike a number of times by Officer Sutton.

46. So, Reggie Ruffin grabbed his pedal bicycle and started to follow Mr. Hylton, as Mr. Ruffin was afraid for the safety for his good friend Karon Hylton.

47. The video produced by the Metropolitan Police Department and placed on YouTube shows the path of Karon Hylton and the chasing officers.

48. Karon Hylton was being chased by an unmarked patrol car driven by Officer Sutton and occupied with passengers Tejera, Ahmed Al-Shrawl , Novick and also by a marked patrol vehicle being driven by Lieutenant Andrew Zabavsky.

49. There is a pattern and practice of District of Columbia Police officers to target and chase motorbike riders many of whom have been knocked of their motorbikes by the chasing police vehicle.

50. This practice is exacerbated when the chasing police vehicle is an unmarked police car because the issue is whether or not those in the chasing vehicle are in fact police officers.

51. GO OPS 301.03 stresses the preference for a vehicle pursuit vehicle to be a marked MPD patrol car.

52. This ongoing pattern and practice of targeting and chasing black bikers with their police vehicles is in violation of The General Order of the Metropolitan Police of the District of Columbia GO-OPS 301.03.

53. This is the standard of care that is established and accepted by the District of Columbia Police Department since February 25, 2003.

54. The pattern and practice of targeting motorbike riders is limited to targeting black bikers in violation of the Equal Protection Clause of the Constitution.

55. The "overriding responsibilities are the protection of human life and property, Preamble of GO OPS 301.03. This order is designed to establish guidelines for members to follow that best protect the lives and property of all persons while member(s) are engaged in a pursuit situation.

56. The chasing officers, Officer Terrence Sutton, Driver; Carlos Tejera, Ahmed Al-Shrawl, Novick, and Zabavsky engaged in the vehicle pursuit of Karon Hylton without obtaining approval from a Watch Commander or Dispatcher and when Hylton had not committed any felonious act which would justify a Vehicle Pursuits GO-OPS_301.03, III. DEFINITIONS 1. b 2, these 5 officers violated GO-OPS_301.03 by engaging in a vehicle pursuit with the intention of confiscating Mr. Hylton's property including cash for their own illicit purposes, which is a known pattern and practice to motorbike riders.

57. There were no grounds to conclude that Mr. Hylton had committed a felony, unless of course the DC MPD views losing one's keys a felony!

Mr. Hylton was not putting anyone in the public in "immediate danger of death or serious bodily injury by riding on this MOPED absent the vehicle pursuit instigated by the officers named herein in the unmarked police vehicle. When this chase began, there was no emergency which precipitated a vehicle police pursuit.

58. The chasing officers in violation of GO 301.03 IV. B attempted to "force the vehicle (MOPED) into another object or off the roadway" as the tragic result was foreseeable and anticipated by GO-OPS 301.03.

59. The said five chasing officers in Sutton's unmarked patrol car and the other marked patrol car driven by Zabavsky never received and did not

immediately notify the dispatcher that they were in a vehicle pursuit nor did they maintain constant communications with the dispatcher as the pursuit progressed. GO OPS 301.03 V. B 1 & 2. Instead Sutton and Zabavsky used a method of communication on a channel that was not broadcast to the communications dispatcher responsible for coordinating vehicle pursuits or the District Watch Commander, the MPD official to whom Zabavsky reported.

60. According to GO OPS 301.03 V. 6, since the chasing officers were in an unmarked police vehicle, they should have turned over the chase if appropriate at all, to a marked police pursuit vehicle.

61. Hence, these chasing officers also violated GO OPS 301.03 V. 8 by failing to ask the assistance of a marked cruiser to take over the vehicle pursuit.

62. Sutton and Zabavsky took control of the scene and deliberately neglected to execute their duties properly. Neither Sutton nor Zabavsky took routine steps to collect evidence relevant to the traffic crash investigation, including preservation the scene, collecting witness information, or interviewing witnesses.

63. After fewer than 21 minutes after the collision, before leaving the scene, Sutton and Zabavsky deactivate their MPD issued body worn camera and conferred privately.

64. .Furthermore, Plaintiffs emphasize that while Tejera, Ahmed Al-Sharwl, Novick were not responsible drivers, they were complicit in the subsequent cover-up of the police drivers' malfeasance when they knew or should have

14

known that Major Crash Investigative Unit ("MCIU") should have been called in to do a detailed collision analysis and intentionally failed to do so in order to save their own skins and the skins of their supervisors; thus these three police passengers preferred to further the cover-up to save themselves from their complicity in a wrongful chase and to protect "collectively", their five brothers in blue who all shared complicity for this wrongful chase and continued the complicity by furthering this conspiracy to evade responsibility and joining in the cover-up post the instant collision.

65. After leaving the scene, Sutton and Zabavsky as well as the other three police passengers returned to the 4th District police station and provided misleading accounts of the incident to the Watch Commander.

66. Sutton denied being engaged in a vehicle pursuit of Hylton notwithstanding the obvious as the official "chase" can be found on youtube and carried by network television channels.

67. Officers Sutton and Zabavsky knew the identity and name of Hylton when Hylton was in the hospital but did not correct his name from John Doe to his correct name, Karon Hylton, such that Hylton would be listed on the hospital records as John Doe; thus delaying the revelation of Hylton's true identity which Sutton and Zabavsky hoped would diminish the possibility of the supervising authorities in the MPD from finding out the facts of the Hylton collision and the seriousness of Hylton's injuries.

68. Thus MCIU and Internal Affairs were not called to the scene to do further investigations after the instant collision.

69. The District of Columbia was placed on notice of the pattern and practice of targeting black bikers with deadly force in the case of *Robinson v. DC*, et.al., 09-2294 wherein on Motion for Summary Judgment, Plaintiff Robinson was allowed to present evidence of the pattern and practice of targeting bikers with police cruisers as a result of the 22 affidavits that occurred before the Robinson collision

70. The other 220 affidavits which occurred after the Robinson collision but before the Karon Hylton collision have served to further put the District on notice of the pattern and practice of targeting black bikers with deadly force by chasing and colliding with them.

71. Plaintiff has acquired another over 60 affidavits post the other 220 affidavits demonstrating the pattern and practice of targeting black bikers with deadly force.

72. The District of Columbia should be very much aware of the perils of punishing motorbike riders by taking aggressive actions against such motorbike riders. This tragic pattern of MPD abuses in targeting young black bikers with deadly force, in contravention of their civil rights, has resulted in at least five unnecessary deaths that include DeOnte Rawlings, Robinson, Terrance Sterling, Jeffery Price, Amir Brooks and of course, in the instant case, Karon Hylton makes six!

73. Prior to the death of Karon Hylton, Karon Hylton suffered extreme emotional distress, fear and apprehension of imminent collisions; then, after the collision Mr. Hylton was caused to suffer conscious pain and suffering,

bodily injuries and discomfort as well as extreme emotional distress and death.

74. As a result of Hylton's death, Hylton leaves behind the statutory beneficiary, Z.J.-B., the daughter of Amaala Jones-Bey, (Mother) and Karon Hylton (Father). The Estate of Karon Hylton seeks recovery of damages for the causes of actions set forth below under the District's Survivorship Statute and its Wrongful Death Statute.

## DAMAGES

75. As a direct and proximate result of the acts and omissions of the District of Columbia and the Defendant 5 officers, as stated herein above and in each Count of Plaintiff's Complaint Decedent Karon Hylton suffered fatal bodily injuries, pain and suffering, disfigurement, inconveniences, mental anguish, disability, fright, embarrassment, demoralization, deformity, discomfort, emotional distress, anxiety and eventual death. A pool of blood at the scene bears witness.

76. Decedent Hylton sustained damages to the Revel MOPED, suffered loss of income and other financial losses, and by the taking of his life was deprived of his normal financial business.

77. Thus, by the taking of his life, Hylton was deprived of his normal maturation, development, educational growth and improvement, economic growth and improvement, and professional advancement.

78. The Estate incurred medical expenses in the treatment of his injuries, funeral and burial expenses, and suffered loss of income and other financial losses.

79. The Estate of Karon Hylton, and other statutory beneficiaries of Decedent have been denied the financial benefits, gifts and other contributions that they would have expected to receive from Decedent, and have suffered and will continue to suffer other damages, including but not limited to pecuniary financial losses and loss of service, all otherwise recoverable under the District of Columbia's Wrongful Death and Survivor Act and solatium under Federal Law.

## COUNT I (Against Defendants )

### Fourth Amendment: Unreasonable Seizure by Excessive Force

80. Plaintiff incorporates by reference, restates and re-alleges each and every allegation set forth above as if fully set forth herein.

81. At all times during this incident material hereto, Officers Sutton, and his 3 police officer passengers were acting under the color of law and driving an unmarked MPD vehicle and Officer Zabavsky was driving a marked MPD patrol vehicle and was also acting under the color of law.

82. Defendants Officers Sutton, Driver; and police passengers Tejera, Ahmed Al-Shrawl, Novick and Officer Zabavsky caused Decedent Hylton to be a seized person by unlawfully chasing Hylton and driving him into an oncoming car, using an unmarked MPD vehicle to do so.

83. Such deadly force was clearly and objectively unreasonable in light of the circumstances and in violation of GO OPS 301.03 known to Defendant Officers Sutton, Tejera, Ahmed Al-Shrawl y Novick and Defendant Officer Zabavsky and no reasonable police officer in such circumstances would have used such means nor thought such means was within the bounds of reason.

84. At all times relevant to this lawsuit, Decedent was not subject to a Terry Stop or Under Arrest and was unarmed, and did not engage with or resist Defendant Pearson in any unlawful way, and was not engaged in any activity or that put Defendants or anyone else at risk of imminent harm.

85. Despite the Decedent's complete lack of aggression towards these Officers, and was just looking for his lost keys when the chase began by these 5 Officers, said Officers used excessive and deadly force to seize the Decedent Hylton;s person. These officers who were driving the DC MPD motor unmarked motor vehicles were not in fear of deadly harm.

86.     In any event, Defendant Officers were not threatened at all by Hylton when he was just looking for his keys. Said officers who engaged in this chase knew or should have known of the dangers of vehicle pursuit increased the likelihood that Hylton would experience harm by chasing him out of an alley onto a public street and have therefore been indicted by Asst. U.S. Attorney General for DC.

87. These Defendant Officers failed to avail of themselves of the "last clear chance" to avert the collision and placed the entire cause of the collision on the shoulders of Defendant 5 Officers and the District.

88. As a direct and proximate result of the illegal search and seizure, Decedent, his statutory beneficiary and his Estate suffered damages as described in this complaint.

89. The Damages sought under this count are proper pursuant to the District of Columbia Wrongful Death Act. The District is responsible under this Act because it has perpetuated a pattern and practice of targeting black bikers with deadly

force. The District behaved with deliberate indifference to known violations of the 4th and Fifth Amendments by tolerating excessive force in executing unlawful seizures engaged in violations of the Fifth Amendment Due Process which shock the conscience.

Wherefore, Z.J.B. Plaintiff, by her next Friend and Mother, Amaala Jones Bey, and Personal Representative of the Estate of Karon Hylton, Jr. demands judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, and $ 30,000,000 (thirty million dollars) in punitive damages.

## COUNT II (Against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick, and Zabavsky)

## Fifth Amendment: Violation of Due Process

90. Plaintiff restates and re-alleges each and every allegation set forth above as if fully set forth herein.

91. At all times, Defendants Officer Sutton, Driver; Officers Tejera, Ahmed Al-Shrawl, Novick and Zabavsky acted under color of law.

92. Pursuant to the Fifth Amendment to the Constitution and the laws of the United States, Karon Hylton had a constitutionally protected right to be free from deprivation of life and liberty without due process of law.

93. In particular, Hylton was protected under the Fifth Amendment from the five officers, Sutton's, Tejera's, Ahmed Al-Shrawl's, Novick's and Zabavsky arbitrary

action under color of law that profoundly interfered with Hylton's right to life, liberty, and/or property and the right to travel.

94. Furthermore, to have MPD police officers like Sutton's, Tejera's, Ahmed Al-Shrawl, Novick and Zabavsky trolling to racially profile and target young black males who were not committing any serious crime and waiting to pounce on a law abiding young black male, so they could unlawfully exercise their authority to take control over Mr. Hylton, and threaten with deadly force, i.e. chasing with a police vehicle was so egregious and outrageous that it shocks the conscience as serious bodily injury or death is to likely and did occur from such a chase in a busy section of town wherein Hylton was chased out of an alley and onto a street where these officers knew or should have known that oncoming traffic was likely to be driving in this busy section of the District of Columbia. .

95. This chase was not an incidental occurrence but an intentional targeting by Sutton and these 5 officers who were racially profiling a black biker on a MOPED for no other reason other than Hylton was looking for his lost keys; causing these officers to engage in a "joyride chasing" of Hylton by Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky to apprehend Hylton who was in fear of being apprehended by these officers known for targeting, terrorizing and brutalizing bikers with their cruisers.

96. Rather than being afforded Due Process procedurally or substantially, the Decedent was unreasonably deprived of his liberty to travel the roads of the United States unimpeded and was, in the process, summarily executed by Officers Sutton's, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky by

dangerously chasing a non-felonious black biker out of an alley into an oncoming vehicle.

97. As a direct result of the aforementioned constitutional violations, Decedent, his statutory beneficiary, and his Estate suffered damages as described in this Complaint herein.

98. Defendants Sutton's, Tejera's, Ahmed Al-Shrawl's, Novick's and Zabavsky intentional wrongful acts exhibit the degree of malice to warrant punitive damages.

99. Damages sought under this Count are proper pursuant to the District of Columbia's Wrongful Death Act.

Wherefore, Plaintiff Z.J.-B., by her next friend and Mother, Amaala Jones-Bey, the Personal Representative of the Estate of Karon Hylton, Jr. demands judgment against Defendant Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, and $ 30,000,000 (thirty million dollars) in punitive damages.

## COUNT III (Against Defendant D.C.)

## § 1983 – Monell Claim for Violations of Amendments Four & Five

100. Plaintiff restates and re-alleges each and every allegation set forth above as if fully set forth herein.

101. As described in the above Counts of this Complaint, Defendant Sutton, Tejera, Ahmed Al-Shrawl , Novick and Zabavsky violated Decedent's Fourth and Fifth Amendment rights.

102. At all times material hereto, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky acted under color of law. They were on duty, performing their job as a police officers of the District of Columbia, pursuant to the authority vested in them by Defendant D.C.

103. At all levels of the District's MPD from the top down, including the Chiefs of Police, Assistant Chiefs of Police, District Commanders, District Captains, District Lieutenants, District Sergeants and Rank and File police officers, the MPD tolerated and ignored the pattern and practice of targeting black bikers with MPD vehicles, whether marked or unmarked and tacitly encouraged it by their deliberate indifference and failure to preclude this prevalent pattern and practice of targeting black bikers with deadly force.

104. The leadership of the MPD knew or should have known that there was a systemic problem of MPD officers targeting black bikers with their cruisers especially after the case of *Robinson v. DC et.al.*, 09-2294 was litigated and Judge Boasberg issued his Order on Summary Judgment allowing Plaintiff Robinson to go forward on the Monell claim of the pattern and practice of targeting black bikers.

105. Furthermore, 6 biker/Police collision cases were litigated with the District since the *Robinson* case but before the Karon Hylton case, in the case of *Terry Cain, et.al*, CA 13 -co- 01103 (JEB).

106. Rather than supervising and training officers properly on correct principles of police work in dealing with dirt bikers, the Districts' leadership targets these bikers with

23

their police vehicles and covers up the consequences of chasing bikers with deliberate indifference and fails to train its officers on how to enforce motorbike infractions.

107. For example, rather than providing learning experiences on how to handle biker pursuit, the leadership joins in and violates GO OPS 301.03 edicts as did Lieutenant Zabavsky by joining in the unlawful pursuit of Hylton.

108. Then, rather than report the obviously serious collision that might and did lead to death, neither Sutton nor Zabavsky called in Major Crash to investigate the collision.

109. Rather than report the seriousness of the collision to Major Crash Investigative Unit and Internal Affairs, Sutton and Zabavsky turned off their Body Worn Cameras and devised a cover-up strategy.

110. This targeting and covering up is not a "one off" isolated incident, this is a pre-choreographed response to officers who were obviously in fear of the consequences of their actions and knew precisely what to do to cover-up their corrupt conduct.

111. This was not an isolated incident; this is similar to other biker collisions like in the *Robinson v. DC* 09-2009, USDC for DC case where numerous false statements were included in the police report and the hierarchy backed up Officer Pepperman even when the police officer passenger said that Officer Pepperman "did that on purpose".

112. Furthermore, as an example of pattern and practice, in *Robinson* the DC MPD was late in notifying the Major Crash Investigations Unit (MCUI) to come to the scene and the scene was cleaned up before MCIU arrived. This is precisely the same thing that happened in the current Karon Hylton case, the scene was cleaned up before MCIU was called to the scene.

113.. None of the 5 officers who chased Hylton called MCIU to report the collision and to come to the Hylton crash scene.

114.. These 5 officers did not preserve the evidence at the scene and even drove over the evidence as they left.

115. This complete dereliction of duty is described in the Indictment against supervising officers Sutton and Zabavsky of which, no doubt, the District has a copy.

116. Officer Sutton, the driver of one of the MPD chasing cars, has a long history of pursuing this practice of targeting bikers with his police vehicles in order to intimidate, threaten and bully motorbike riders in D.C as is well known in the DC MPD.

117. None of the passengers in the Sutton vehicle assisted sufficient to interdict Sutton who was exceeding his authority and policely prerogatives.

118. These practices and/or customs of chasing and knocking black bikers off their motorbikes were commonplace and were known and tacitly condoned by supervisors within the MPD.

119. At all times relevant to the instant lawsuit, it was the policy, practice and custom of Defendant D.C., endemic to its MPD, to condone abuses of police power by its officers, including but not limited to the type of abuse perpetrated against Hylton herein, through its inaction and failure to investigate and pursue reports of unlawful seizures and use of excessive force, and failure to deter such behavior by its agents, e.g. Kabavsky & Sutton through proper training, reprimand, suspension or dismissal, particularly with respect to the pattern of targeting of black motorbike/motorcycle drivers.

120. At all times relevant to the instant lawsuit, it was the policy, practice and custom of Defendant D.C., endemic to its MPD, to fail to train and discipline its officers, creating a

situation where its unfit, untrained and undisciplined officers were certain to violate the constitutional rights of black motorbike riders, particularly in lower income areas of town where class bias is rampant, in the District of Columbia through unreasonable seizures, use of excessive force, and deprivation of due process of the law, without fear or consequence as the police protect each other behind their blue wall of silence in DC.

121. The above described policies and customs, as well as pattern and practices demonstrate a deliberate indifference on the part of policy makers of Defendant D.C. to protect the constitutional rights of black motorcyclists and were the direct and proximate cause of the violations of plaintiff's rights alleged herein. In contrast, in contempt, they have ignored them and demeaned them.

122. As a result of improper training and instruction by Lieutenant Zabavsky as well as failure to train by adequate supervision and example by Defendant D.C., Defendants Sutton, and the dereliction of duty of Tejera, Ahmed Al-Shrawl and Novick these officers were responsible for the death of Hylton and subsequently continued their perfidy by an intentional and deliberate cover-up by all of these officers.

123. As a result of the above described policies and customs, the District knew or should have known that Officer Sutton was unfit and incapable of properly investigating instances of black bikers driving on the streets of DC regarding collisions between police cruisers and black motorbike/motorcycle drivers.

124. As a direct and proximate result of the official and unofficial policies, procedures, customs, usages and practices of Defendant D.C., Defendant D.C. is directly liable under 42 USC § 1983 for the violations of Decedent's constitutional rights described in

the above Counts, which Federal statute allows for "solatium" damages that pre-empts the DC Statute which limits "solatium" damages.

125. As a direct and proximate result of the above described policies and customs, Decedent, his statutory beneficiaries, and his Estate suffered damages as described in this complaint.

126. Defendant D.C.'s outrageous, intentional, reckless and grossly negligent unconstitutional and wrongful acts exhibit the degree of malice to warrant punitive damages.

127. Damages sought under this count are properly pursuant to the District of Columbia Wrongful Death Act.

Wherefore, Plaintiff, individually and also her personal representative and administrator of the Estate of Karon Hylton, demands judgment against Defendant D.C. in the amount of $ 70,000,000.00 (seventy million dollars) plus prejudgment interest, attorney's fees and other costs of this suit, and other such relief that the Court may deem just and proper for this Monell Claim against the District of Columbia.

STATE LAW CLAIMS – WRONGFUL DEATH COUNTS (D.C. Code 16-2710)

Count IV – (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky & Defendant D.C.)

Negligence and Negligence Per Se

128. Plaintiff restates and re-alleges each and every allegation set forth above as if fully sent forth herein.

129. At the time of the instant collision, Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky were employed as a police officers for the Metropolitan Police Department in

the District of Columbia, and were acting under color of law. Thus a *respondeat superior* relationship between the District and the 5 police officers attaches.

130. Defendants Sutton and Zabavsky had a duty to operate their police vehicles in a careful and prudent manner, and obey the rules of Vehicle pursuit found in GO OPS 301.03 and within the scope of showing a duty of reasonable care to a citizen that was not put under lawful arrest.

131. Under the common law and breaches of statutory authority, Defendants owed a duty of care not to chase motor vehicles, including motorbikes, and not to chase motorbikes from alleys into open intersections because of known and obvious dangers and to do so shows a conscious disregard for an extreme risk of death or serious injury to Hylton in violation of DC Code 22-2103.

132. Being engaged in such a chase in violation of GO OPS 301.03 breaches the duty of care owed to drivers of motor vehicles on the street to drive reasonably and with due care for the safety of other motorists and the breach thereof results in a violation of negligence per se.

133. Both Sutton and Zabavsky breached the duty they owed to motor vehicle traffic by engaging in a chase that put Hylton at risk of grave bodily harm

134. Consequently, Defendant D.C. is liable under the doctrine of respondeat superior for the aforementioned tortious acts and omissions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky for said negligence and negligence per se. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his Personal Representative.

Wherefore, Plaintiff, Z.J.B., by her Next Friend and Mother, Amaala Jones-Bey, and Personal Representative of the Estate of Karon Hylton demands judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky and Defendant D.C. in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper.

## Count V (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky & Defendant D.C.)

### Assault

135. Plaintiff restates and re-alleges each such and every allegation set forth above as if fully set forth herein.

136. At all times material hereto, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky were employed as DC Police Officers and intentionally and unlawfully assaulted Plaintiff Hylton by unlawfully chasing and using deadly force, placed Hylton in great fear of his life and did ultimately cost Hylton his life.

137. Decedent's reaction to Defendants chasing Hylton was that of extreme apprehension of bodily harm, fear of his demise, anxiety that he would be hurt, and that he would be maimed by catastrophic injury.

138. As a direct and proximate cause of the collision, Decedent, his statutory beneficiaries and his Estate suffered damages as described in this Complaint.

139. All such damages were proximately and solely caused by the intentional actions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky that were chasing Hylton in violation of DC MPD regulations while he was riding on his motorbike.

140. At all times during which these tortious acts were being committed by Defendants, they were employed as police officers by Defendant D.C. and were on duty, operating police vehicles owned by Defendant D.C within the scope of their employment.

141. Consequently, Defendant D.C. is liable under the doctrine of respondeat superior for the aforementioned tortious acts and omissions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky who were employed as DC Police Officers.

142. The instant claims survive Decedent and damages are recoverable under the Wrongful Death Act of the District of Columbia. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Mr. Price as pursued by his Personal Representative.

Wherefore, Plaintiff, Z.J.B. and the Personal Representative of the Estate of Karon Hylton, Jr. demands judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, jointly and severally in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, and $ 30,000,000 (thirty million dollars) in punitive damages as a result of their intentional assault upon Karon Hylton, for the loss of care, education, training, guidance and personal advice, pecuniary losses (e.g. loss of Mr. Hylton's future earning capacity and support), loss of life, and other damages.

Count VI - (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, Defendant D.C.)

**Battery**

143. Plaintiff restates and re-alleges each such and every allegation set forth above as if fully set forth herein.

144. At all times material hereto, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky were employed as police officers who intentionally and unlawfully caused their police vehicles to dangerously chase Hylton into an oncoming vehicle which resulted in the death of Hylton.

145) Decedent's reaction to Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky unlawful chasing Hylton was extreme fear that was realized when he drove out of an alley and was hit by an oncoming vehicle which was designed to produce extreme force that resulted in bodily harm and subsequent death.

146. As a direct and proximate cause of the collision, Decedent, his statutory beneficiaries and his Estate suffered damages as described in this Complaint.

147. All such damages were proximately and solely caused by the intentional actions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky to unlawfully chase Hylton.

148. At all times during which these tortious acts were being committed by these 5 Defendants, they were employed as police officers by Defendant D.C. and were on duty, operating police vehicles owned by Defendant D.C within the scope of their employment.

149. Consequently, Defendant D.C. is liable under the doctrine of respondeat superior for the aforementioned tortious acts and omissions of Defendants

150. The instant claims survives Decedent and damages are recoverable against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky.

Wherefore, Plaintiff Z.J.-B., by her next friend and Mother, Amaala Jones-Bey, and the Personal Representative of the Estate of Karon Hylton demands judgment against Defendant these five police officers involved in the chase, Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, jointly and severally in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, and $ 30,000,000 (thirty million dollars) in punitive damages as a result of their battery upon Hylton for the loss of care, education, training, guidance and personal advice, pecuniary losses (e.g. loss of Mr. Hylton's future earning capacity and support), loss of life, and other damages. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his Personal Representative.

Count VII (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky & Defendant D.C. committed negligence per se by virtue of violating the

## Statutory Assault and Battery D.C. Code § 5 -123.02

151. Plaintiffs restates and re-alleges each and every allegation set forth above as if fully set forth herein.

152. Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, as a result of the unlawful chase, caused Hylton to be hit forcefully unto death by the collision between the MOPED Hylton was driving out of the alley into the oncoming vehicle on Kennedy Street. This biker - MPD collision caused great apprehension, extreme anxiety and a death blow as a result of the collision, qualifying as assault and battery.

153. Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky caused the collision that resulted in an assault and battery, including intentional forceful threats of predictable contact with oncoming vehicles which rises to the level of negligence per se.

154. District of Columbia law provides the standard that "any police officer who uses unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery, and upon conviction, punished therefore." DC Code Ann. § 5 – 155. This statute is meant to promote safety; Hylton is a member of the class of persons to be protected under the statute, and the statute imposes a specific duty on these 5 police officers who were members of MPD and were trying to apprehend, arrest and/or imprison Mr. Hylton. The breach of this statute and standard of care constitutes "negligence per se". Its law and remedies attach to both Wrongful Death Counts and Survival Counts and both are pleaded herein.

156. Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky while acting within the scope of their employment violated DC Code Ann. § 5 – 132.02 as well as the duty of care owed under common law intentional torts as they used excessive force in attempting to arrest and imprison Hylton.

157. Defendant D.C. is jointly and severally liable under the doctrine of respondeat superior for the aforementioned tortious acts and omissions by Defendants Sutton,

Tejera, Ahmed Al-Shrawl, Novick and Zabavsky. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Mr. Price as pursued by his Personal Representative.

Wherefore, Plaintiff, Z.J.B., by her Mother and Next Friend, Amaala Jones Bey, and the Personal Representative of the Estate of Karon Hylton demands judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper , and $ 30,000,000 (thirty million dollars) in punitive damages as a result of their assault and battery upon Hylton for the loss of care, education, training, guidance and personal advice, pecuniary losses (e.g. loss of Hylton's future earning capacity and support), loss of life, and other damages.

Count VIII (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky & Defendant D.C.)

### Negligent Infliction of Emotional Distress

158. Plaintiffs restates and re-alleges each and every allegation set forth above as if fully set forth herein.

159. As a result of this intense chase by MPD Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky and the ultimate collision that caused Hylton's Death, Hylton experienced extreme emotional distress, fear and apprehension which contributed to his demise.

160. As a direct and proximate cause of these 5 Police Officer Defendants' unintentional acts but negligent acts, Decedent, his statutory beneficiaries, and his Estate suffered the damages as described in this complaint.

161. Defendant D.C. is jointly and severally liable under the doctrine of respondeat superior for the aforementioned tortious acts and omission of Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky

162. Damages sought under this count are proper pursuant to the Wrongful Death Act. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his Personal Representative, and next friend and Mother of Plaintiff.

Wherefore, Plaintiff, Z.J.B, by her Mother and Next Friend, Amaala Jones-Bey, and the Personal Representative of the Estate of Karon Hylton demands judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper.

Count IX (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky and Defendant D.C.)

**Intentional Infliction of Emotional Distress**

163. Plaintiffs restate and re-allege each and every allegation set forth above as if fully set forth herein. Furthermore, Plaintiffs emphasize that while Tejera, Ahmed Al-Sharwl,

Novick were not responsible drivers, they were complicit in the subsequent cover-up of the police drivers' malfeasance when they knew or should have known that Major Crash Investigative Unit (MCIU) should have been called in to do a detailed collision analysis and intentionally failed to do so in order to save their own skins and the skins of their supervisors.

164. As a result of this deliberate, intentional and intense chase by MPD's Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky and the ultimate collision that resulted in Hylton's death, caused Hylton to experience extreme emotional distress, fear and apprehension before the collision as well as the intense pain of great bodily harm which contributed to his demise.

165. After the impact between the oncoming vehicle on Kennedy Street and the MOPED Hylton was driving, Officers Sutton and Zabavsky plotted an intentional cover-up and Tejera, Ahmed Al-Shrawl, and Novick joined into the furtherance of this cover-up by failing in their duty to call in MCIU to do their required investigation of a collision death/serious injury case which prevented the MPD to complete a proper investigation into this wrongful chase. These 5 officers showed only their concern for their fellow officers and themselves who were involved in this collision, and showed no concern for the dying Hylton while Hylton writhed in agony struggling to survive, and demonstrating their heartless and sadistic intent to cause Hylton harm.

166. As a direct and proximate cause of Defendants Sutton's, Tejera's, Ahmed Al-Shrawl's, Novick's and Zabavsky 's intentional infliction of acts which gave rise to Emotional Distress and physical injuries, Hylton and his statutory beneficiaries, and his Estate suffered the damages as described in this complaint.

167. Defendant D.C. is jointly and severally liable under the doctrine of respondeat superior for the aforementioned tortious acts and omission of Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky

168. Damages sought under this count are proper pursuant to the Wrongful Death Act. Wherefore, Plaintiff, Z.J.B., and the Mother and Next friend, of Plaintiff, individually and so to be the Personal Representative of the Estate of Karon Hylton demands judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, and $ 30,000,000 (thirty million dollars) in punitive damages as a result of their intentional infliction of emotional distress upon Hylton for the loss of care, education, training, guidance and personal advice, pecuniary losses (e.g. loss of Hylton's future earning capacity and support), loss of life, and other damages.

COUNT X - (Defendant D.C.)

**Negligence in Hiring, Retention, Training and Supervision**

169. Plaintiff restates and re-alleges each and every allegation set forth above as if fully set forth herein.

170. At all times relevant herein, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky were employees, agents and/or servant of Defendant, D.C. and acted under the direction and control of, and pursuant to the statutes, rules, regulations, polices, and procedures of Defendant D.C.

171. Defendant D. C. had a duty, through performance of reasonable inquiry, to hire as police officers, only such individuals who are capable of appreciating the rights of citizens of the District of Columbia afforded by the United States Constitution, and to suspend and dismiss individuals unfit or unable to enforce the District's police powers within constitutional boundaries.

172. Rather that training officers to execute their duties fairly within the recognized parameters of good governance and police execution, the MPD and District filled its ranks with officers whose recognized benefit was subverting justice by engaging in cover-ups when police malfeasance corruption was discoverable with the minimum of basic investigatory police research.

173. Rather than weed out officers who would execute justice fairly, they sought out officers who were skilled in the arts of a cover-up culture and would protect the D.C. Metropolitan's Police Department and protect the District from large civil actions.

174. This behavior is particularly pronounced in the area of black motorbikers who are targets of aggressive D.C. MPD Police Officers because they are racially profiled and pursued.

175. One clear example is Officer Pepperman who articulated numerous falsehoods on police report covering his collision against a black biker and was ultimately assigned to MCIU where he would investigate another MPD biker wrongful death collision between Officer Pearson and Jeffery Price as a lead on scene investigator for the Price collision.

176. Defendant D.C. had a duty to train its officers to effect searches and seizures within the bounds of the United States Constitution, and not in violation of the Fourth and Fifth Amendments of the said Constitution. Sutton and the 3 other officer

passengers unlawfully seized Hylton by causing him to drive into the oncoming traffic in violation of GO OPS 301.03.

177. As a direct and proximate result of the negligence of Defendant D.C. with respect to its negligent hiring, retention, training and supervision of officers who collude to engage in cover-ups at the supervisory level, Defendant Hylton, Decedent, his statutory beneficiaries, and his Estate suffered damages as described in this complaint.

178. The above referenced damages were the direct and proximate result of the negligence of Defendant D.C. in abrogating its duties to hire, retain, supervise and train officers who will correctly enforce the Constitution and civil rights of the citizens and occupants of D.C.

179. The damages sought against Defendant D.C. under this count are proper pursuant to the District of Columbia Wrongful Death Act. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his Personal Representative.

Wherefore, Plaintiff, Z.J.B., individually by her Mother and next friend, Amaala Jones-Bey, and the Personal Representative of the Estate of Karon Hylton demands judgment against Defendant D.C. in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit.

## CONSTITUTIONAL CLAIMS – SURVIVORSHIP COUNTS

### Constitutional Claims – Survivorship Counts

### Count XI – (Against Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky)

## Fourth Amendment Excessive Force

180. Plaintiffs restate and re-allege each and every allegation set forth above as if fully set forth herein.

181. At all times material hereto, Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky acted under color of law.

182. While Hylton was being chased by Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, these officers knew or should have known of the potential danger to Hylton being hit by another vehicle, as contemplated by the controlling police general order 301.03, and instead guided Hylton into the trap laid for him by the MPD offices like running cattle through a chute in a slaughter house, thereby seizing Hylton vicariously as a result of the predictable collision with an oncoming vehicle in a busy area of the District of Columbia.

183. Such deadly force was clearly and objectively unreasonable in light of the circumstances known to Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky and no reasonable police officer in such circumstances would have used such means nor thought such means was within the bounds of the law or reason.

184. Decedent Hylton was unarmed in the hospital as a John Doe, when the officers knew all along the name of MOPED driver Hylton that they had chased; all in an effort to keep the injured MOPED drivers name as low profile as possible in the hospital. This fact that they knew it was Hylton was obvious as his name was shouted out from one of the police officers who was engaged in the unlawful and fatally dangerous chase.

185. Despite the Decedent's complete lack of aggression towards Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky or anyone else, Defendants Sutton,

Tejera, Ahmed Al-Shrawl, Novick and Zabavsky used excessive and deadly force to seize the Decedent's Hylton's person.

186. The force used to stop Hylton was disproportionate to the force necessary to seize Hylton.

187. By the actions of Defendants' Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky actions and conduct, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky effected an unreasonable and illegal seizure of Decedent in violation of the Fourth Amendment's prohibition against the use of deadly and excessive force.

188. As a direct and proximate of this illegal search and seizure, Hylton and his statutory beneficiary, and this Estate suffered damages as described in this Complaint.

189. Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavskys outrageous, shocking intentional wrongful acts exhibit the degree of malice to warrant punitive damages.

190. The instant claim survives Decedent and damages are recoverable under the District of Columbia's Survivorship Act. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his Personal Representative.

Wherefore, Plaintiff, Z.J.B. by her Next Friend and Mother, Amaala Jones- Bey and the Personal Representative of the Estate of Karon Hylton demands judgment against Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, including solatium and $ 30,000,000 (thirty million dollars) in

41

punitive damages as a result of their assault and battery upon Hylton, for the loss of care, education, training, guidance and personal advice, pecuniary losses (e.g. loss of Hylton's future earning capacity and support, loss of life, and other damages.

## Count XII (Against Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky)
## Fifth Amendment Claim – Violation of Due Process

191. Plaintiff restates and re-alleges each and every allegation set forth above as if fully set forth herein.

192. At all material times, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky acted under color of law.

193. Pursuant to the Fifth Amendment, and the laws of the United States, Decedent had a constitutionally protected right to be free from the deprivation of life and liberty without due process of law as well as the right to travel.

194. Specifically, Decedent had a right to be free from unreasonable governmental interference and obstruction while traveling on the roads of the United States.

195. While Decedent was being chased by Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky they caused Hylton to exit the alley and enter the 700 block of Kennedy Street in order to escape a collision with Sutton's MPD unmarked police vehicle.

196. Rather than being afforded Due Process, the Decedent was unreasonably deprived of his liberty to travel on the roads of the United States unimpeded, and in the process, summarily executed by Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, under the color of law of the District of Columbia, thus further depriving him of his life and liberty without due process of law.

197. Such wanton disregard for the rights of a citizen of DC was exacerbated by the intentional, outrageous and shocking chasing of a non-felonious citizen into oncoming lane of travel of Kennedy Street, NW, DC.

198. As the direct and proximate result of the aforementioned constitutional violations, Decedent, his statutory beneficiaries and his Estate suffered damages as described in this Complaint.

199. Defendants' Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky outrageous and intentional wrongful acts which shocks the conscience and exhibits a degree of malice to warrant punitive damages.

200. The instant claim survives Decedent and damages are recoverable under the District of Columbia Survivorship Act. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his Personal Representative, Amaala Jones-Bey, who has been appointed as the Personal Representative of the Estate of Karon Hylton, by the Probate Division of the DC Superior Court.

Wherefore, Plaintiff, Z.J.B., by her Mother and Next friend, Amaala Jones-Bey, the Personal Representative of the Estate of Karon Hylton . demands judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, and $ 30,000,000 (thirty million dollars) in punitive damages as a result of their assault and battery upon Hytlon

for the loss of care, education, training, guidance and personal advice, pecuniary losses (e.g. loss of Hylton's future earning capacity and support), loss of life, and other damages.

## Count XIII (Against Defendant D.C.)

### § 1983 *Monell* Claim for Violations of Fourth and Fifth Amendment Rights

201. Plaintiffs restates and re-alleges each and every allegations set forth above as if fully set forth herein.

202. As described in the above Counts of this Complaint, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky violated the Decedent's Fourth and Fifth Amendment rights.

203. At all times material hereto, the five officers in this chase, acted under the color of law. These Officers were on duty, performing their job as police officers of the District of Columbia , pursuant to the authority vested in them by Defendant D.C.

204. At all times relevant to the instant lawsuit, it was the policy, practice and custom of Defendant D.C., endemic to its MPD, to encourage and permit officers on patrol in their vehicles to intimidate black bikers, intentionally, using means including but not limited to swerving into motorcyclists lane of traffic causing the rider to swerve, fall or lose control of the motorcycle and chasing bikers into dangerous situations.

205.. Officers of the MPD, including Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, chased and pursued this practice in order to intimidate, threaten and bully motorbike riders in D.C.

206.. These practices and/or customs employed by the MPD officers, including Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky were common place and were knowingly or tacitly condoned by the supervisors within the MPD.

207. At all times relevant to the instant lawsuit, it was the policy, practice and custom of Defendant D.C., endemic to its MPD, to condone abuses of police power by its officers, including but not limited to failing to investigate and pursue reports of unlawful seizures and use of excessive force, and failure to deter such behavior by its police officers/ agents through proper training, reprimand, suspension or dismissal, particularly with respect to incidents involving young motorcyclists.

208.. At all times relevant to the instant lawsuits, it was the policy, practice and custom of Defendant D.C., endemic to its MPD, to fail to train and discipline its officers, creating a situation where its unfit, untrained and undisciplined officers were certain to violate the constitutional rights of black motorbikers in the District of Columbia through unreasonable seizures, use of excessive force, and deprivation of due process of the law, without fear of consequence. If caught, the officers engaged in "cover-ups".

209. The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of Defendant D.C. to the constitutional rights of black motorbike drivers and others within the District, and were the direct and proximate cause of the violations of plaintiffs' rights alleged herein.

210. As a result of improper training by Defendant D.C., Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky were incapable to do their jobs without violating the constitutional rights of black motorbike riders in the District of Columbia with which they came into contact.

211. Defendant D.C. allowed Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky to perform his job without providing him proper training with respect to protecting the Constitutional rights of District Citizens and specifically with respect to constitutional rights of black motorbike riders, with deliberate indifference to the fact that these 5 officers were almost certain to violate the constitutional rights of black motorbike riders and others in the District of Columbia.

212. As a result of the above described policies and customs, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky engaged in an elaborate scheme to cover-up their wrongful and shameful behavior. The Defendant District of Columbia should have known that they were unfit and incapable of carrying out the police powers of Defendant D.C. without violating the United States Constitution as it required the United States Department of Justice to bring these kinds of officers to account.

213. As a result of the described policies, customs and practices, Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky believed that their actions would not be properly monitored by supervisory officers and that the misconduct would not be honestly investigated or punished, but would be tolerated. It is only because of the intervention of the US Office of the Attorney General's office in the criminal portion of this action, in that accountably of the DC MPD is being brought to bear.

214.. As a direct result of the above described policies, practices and customs, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, as Pepperman 𝄒 Pearson before them, believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or punished, but would be tolerated and covered-up by superior officers. The primary reason that these

officers may be held accountable for their unlawful actions is the intervention of the Office of the Attorney General of the United States to protect the constitutional rights of DC Citzens to be free from unconstitutional violations of the 4th and 5th Amendments from the District and its MPD police officers, not from any actions from the "cover-up" culture of the District of Columbia government and its police department.

215.. As a direct and proximate result of the official and unofficial policies, procedures, customs, usages and practices of Defendant D.C., Decedent was deprived of this aforementioned constitutional rights in the manner described in the counts herein.

216.. As a direct and proximate result of the official and unofficial policies, procedures, customs, usages and practices of Defendant D.C., Defendant D.C. is directly liable under § 1983 for the violations of Decedent's constitutional rights described in the above Counts.

217.  As the direct and proximate result of above described policies, practices and customs, Decedent, his statutory beneficiaries, and his Estate suffered damages as described in this Complaint, including loss of "solatium" as allowed by 42 USC 1983.

218.  As a direct and proximate result of above described policies and customs, Decedent, his statutory beneficiaries and his Estate suffered damages as described in this Complaint.

219.  Defendant D.C.'s outrageous, intentional, reckless and grossly negligent unconstitutional and wrongful acts exhibit the degree of malice to warrant punitive damages and loss of "solatium" which pre-empts DC law to the contrary.

220.  The instant claim survives Decedent and damages are recoverable under the District of Columbia Survivorship Act.

Wherefore, Plaintiff, Karon Hylton , individually and as a personal representative and administrator of the Estate of Jeffery Price, Jr., demands judgment against Defendant D.C. in the amount of $ 70,000,000.00 (seventy million dollars) plus prejudgment interest, attorney's fees and other costs of this suit, and other such relief that the Court may deem just and proper which Federal statute allows for "solatium" damages that pre-empts the DC Statute which limits "solatium" damages.

## STATE LAW CLAIMS – SURVIVORSHIP COUNTS

### Count XIV – (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky and DC.)

### Negligence and Negligence Per Se

221. Plaintiff restates and re-allege each and every allegation set forth above as if fully set forth herein.

222. MPD Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky chased Hylton up the alley that lead onto the 700 block of Kennedy Street, NW.

223. MPD Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky violated General Order 301.03 in that they engaged in a chase without approval by supervising officers and in fact, used a back channel to avoid interaction so that the prevailing authority would not be able to monitor such vehicle pursuit.

224. MPD Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky violated General Order 301.03 in that they engaged in a chase in an unmarked police vehicle without the approval of a Watch Commander or other appropriate MDP official in violation of General Order 301.03. When this chase began, there was no emergency which precipitated a vehicle police pursuit.

225. MPD Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky violated General Order 301.03 in that they were not authorized to engage in a chase of Hylton. MPD Officers are not allowed to chase vehicles that are committing mere traffic offenses and must have permission of a watch commander or one with similar authority to do so; when in fact, Hylton was in all respects driving a legal MOPED on the Streets of DC and was not breaking any law when the "chase" by MPD officers commenced.

226. Hylton would not have been speeding but for the chase instigated by Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky as Hylton was carefully and slowly retracing his previous biker path as he was looking for the keys to his automobile that he was trying diligently and carefully to find.

227. Rather than follow the admonition of GO 301.03, which places a priority on "the protection of human life and property", this order, which was "designed to establish guidelines for members to follow that best protect the lives and property of all person while members are engaged in a pursuit." was violated by Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky .

228. As a result of Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky breach of duties to avoid unauthorized vehicle pursuits, said officers engaged in the vehicle pursuit with the inevitable result in a busy section of D.C, that a motorbike rider being pursued out of an alley onto a busy street would most likely result in a collision that would result in serious injury which could and did lead to the death of Hylton.

229. As a result of the collision and the negligence of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, Hylton and his statutory beneficiary suffered damages described in this complaint.

230. All of such damages were proximately and solely caused by the negligence of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick, Zabavsky and D.C.

231. Defendant D.C. is jointly and severally liable under the doctrine of respondeat superior for the aforementioned tortious acts and omissions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky.

232. The instant claim survives Decedent and damages are recoverable under the District of Columbia Survivorship Act. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his daughter via her Mother, Personal Representative appointed by the DC Probate Division of the DC Superior Court and next friend, Amaala Jones-Bey.

Wherefore, Plaintiff , Z.J.B, individually by her Next Friend and Mother, Amaala Jones-Bey, demands judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper.

Count XV (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, Defendant D.C.)

**Assault**

233. Plaintiff restates and re-alleges each such and every allegation set forth above as if fully set forth herein.

234. At all times material hereto, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky intentionally and unlawfully vicariously assaulted Hylton by putting him in the hopeless situation of being hit by a police car or hit by a street car as a result of the unapproved chase with an unmarked police vehicle after a vulnerable MOPED rider.

235. Decedent's reaction to Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky's using their unmarked MPD Police vehicle to chase was that of extreme apprehension of bodily harm as he knew of the pattern and practice of the DC MPD of targeting bikers because his brother had been chased and targeted by Officer Sutton approximately 5 times before & his brother was hospitalized from another biker chase.

236. As a direct and proximate cause of the collision, Decedent, his statutory beneficiaries and his Estate suffered damages as described in this Complaint.

237. All such damages were proximately and solely caused by the intentional actions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky.

238. At all times during which these tortious acts were being committed by Defendants, they were employed as police officers by Defendant D.C. and were on duty, operating police vehicles owned by Defendant D.C within the scope of their employment.

239. Consequently, Defendant D.C. is liable under the doctrine of respondeat superior for the aforementioned tortious acts and omissions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky.

240. The instant claims survives Decedent and damages are recoverable under the District of Columbia Survivorship Act. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Mr. Price as pursued by his Personal Representative.

Wherefore, Plaintiff , Z.J.B. by her Mother and Next Friend, Amaala Jones-Bey, and P.R. of the Estate of Karon Hylton demands judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, jointly and severally  in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, and $ 30,000,000 (thirty million dollars) in punitive damages as a result of their assault and battery upon Hylton for the loss of care, education, training, guidance and personal advice, pecuniary losses (e.g. loss of Hylton future earning capacity and support), loss of life,  and other damages and solatium under Federal Law.

Count XVI (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky & Defendant D.C.)

**Battery**

241. Plaintiff restates and re-alleges each and every allegation set forth above as if fully set forth herein.

242.  At all times material hereto, Defendant Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky acted with the course and scope of their employment as a servants and/or employees of Defendant D.C.

243. Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky  set up Hylton by chasing him up an alley that leads onto a busy street in the 700 block of Kennedy Street, NW in violation of GO 301.03 and driving him into the trap set by these officers where a collision would be likely and/or inevitably.  All the occupants of these police vehicles

knew or should have known that they were engaged in an unlawful chase, including passengers Tejera, Ahmed Al-Shrawl and Novick, and of course the two drivers, Sutton and Zabavsky.

244. As a direct and proximate cause of the collision, Hylton and his statutory beneficiaries, and his Estate suffered the damages as described in this Complaint including wrongful death.

245. All such damages were proximately and solely caused by the intentional actions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky.

246. Defendant D.C. is jointly and severally liable under the doctrine of respondeat superior for the aforementioned tortious acts and omissions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky.

247. The instant claim survives Decedent and damages are recoverable under the District of Columbia's Survivorship Statute. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his Personal Representative.

Wherefore, Plaintiff, Z.J.B., by her Mother and Next Friend and the Personal Representative of the Estate of Karon Hylton demand judgment against Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, and $ 30,000,000 (thirty million dollars) in punitive damages as a result of their assault and battery upon Hylton,

for the loss of care, education, training, guidance and personal advice, pecuniary losses (e.g. loss of Hylton's future earning capacity and support), loss of life, solatium under Federal law, and other damages.

Count XVII (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky & Defendant D.C.)

### Negligent Infliction of Emotional Distress

248. Plaintiff restates and re-alleges each and every allegation set forth above as if fully set forth herein.

249. At all times material hereto, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky acted within the scope of their employment as servants and/or employees of Defendant D.C.

250. Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky chased Plaintiff Hylton down an alley onto Kennedy Street causing fear and apprehension; setting him up for an ever greater fear – the trap set by Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky wherein Hylton is faced with the choice of being hit by a speeding police car targeting him or hit by an oncoming citizen vehicle. .

251. By Officers Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky chasing Hylton down the alley, Hylton was placed in a position of extreme emotional distress, fear and apprehension.

252. Such a chase generated overwhelming fear and anxiety that forcing Hylton from an alley onto a blind street might and did result in his untimely death.

253. Hylton being chased by two police vehicles following behind him while being abruptly being cut off an approaching vehicle on a busy Kennedy Street caused an immense amount of emotional distress to Hylton.

254. Hylton and his heir is entitled to his damages under the theory of negligent infliction of emotional distress.

255. Defendant D.C. is jointly and severally liable under the doctrine of respondeat superior for the aforementioned torts and omissions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky.

256. The instant claims survive Decedent and damages are recoverable under the District of Columbia Survivorship Act. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his Personal Representative.

Wherefore, Plaintiff, Z.J.B., individually by her Next Friend and Mother, Amaala Jones-Bey and Personal Representative of the Estate of Karon Hylton demand judgment against Defendant Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit.

Count XVIII (Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky & Defendant D.C.)

### Intentional Infliction of Emotional Distress

257. Plaintiff restates and re-alleges each and every allegation set forth above as if fully set forth herein.

258. At all times material hereto, Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky acted within the scope of their employment as servants and/or employees of Defendant D.C.

259. Defendants Sutton and Zabavsky intentionally commenced chasing Plaintiff Hylton setting Hylton up for an ever greater fear – the trap set by Defendants Sutton and Zabavsky wherein Hylton is chased out of an alley that enters 700 block of Kennedy Street and forced onto a main thoroughfare where he is likely to be and in fact was hit by an oncoming that ended Hylton's life .

260. This chasing of Hylton placed Hylton in a position of extreme emotional distress, fear and apprehension.

261. Hylton is also entitled to his damages under the theory of intentional infliction of emotional distress as these officers placed Hylton in a situation that was inevitable that Hylton would be hit by an oncoming vehicle which would be, by its very nature, deadly force.

262. Defendant D.C. is jointly and severally liable under the doctrine of respondeat superior for the aforementioned tortious acts and omissions of Defendants Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky Pearson.

263. The instant claims survive Decedent and damages are recoverable under the District of Columbia Survivorship Act. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Hylton as pursued by his Personal Representative.

Wherefore, Plaintiff, Z.J.B, individually by her Mother and Next Friend, Amaala Jones Bey, and the Personal Representative of the Estate of Karon Hylton,

demands judgment against Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky, in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit, and such other relief that the Court may deem just and proper, and $ 30,000,000 (thirty million dollars) in punitive damages as a result of their negligence and negligence per se upon Hylton for the loss of care, education, training, guidance and personal advice, pecuniary losses (e.g. loss of Hylton's future earning capacity and support), loss of life, and other damages.

Count IXX (Defendant D.C.)

## Negligence in Hiring, Retention, Training and Supervision

264. Plaintiff restates and re-alleges each and every allegations set forth above as if fully set forth herein.

265. At all times relevant herein, Defendants Sutton and Kabavsky were employees, agents and/or servants of Defendant, D.C. and acted under the direction and control of D.C, and pursuant to the statutes, rules, regulations, polices, and procedures of Defendant D.C.

266. Defendant D.C. had a duty, through performance of reasonable inquiry, to hire as police officers, only such individuals who are capable of appreciating the rights of citizens of the District of Columbia afforded by the United States Constitution, and to suspend and dismiss individuals unfit or unable to enforce the District's police powers within constitutional boundaries.

267. Defendant D.C. had a duty to refrain from retaining, i.e., a duty to suspend and dismiss, those officers who demonstrate lack of capacity to appreciate the rights of citizens of the District of Columbia afforded by the Unites States Constitution, and to suspend and dismiss individuals unfit or unable to enforce the District's police powers within constitutional boundaries.

268.. Defendant D.C. retained the employment of Officer Sutton who had a history of chasing targeting bikers with police vehicles as did the supervisor Zabavsky.

269. It was a foregone conclusion that Sutton would engage with the MPD hierarchy to cover-up illegal police behavior and that is what Sutton and Zabavsky conspired to do, engage in a cover-up of their wrongful acts of chasing a biker without official position.

270.. Both Zabavsky and Sutton turned off their primary dispatch channel of communication to communicate on a private channel independent line such that both Zabavsky and Sutton could engage in a cover-up.

271. In breach of the aforementioned duties, set forth herein, Defendant D.C. failed to suspend and dismiss Zabavsky for his outrageous conduct and was further supported by the MPD hierarchy to continue his employment when they knew or should have known that Zabavsky was engaged in a cover-up when his blatant disregard for the civil rights of the citizens of DC was obvious and notorious. It was either obvious or should have been obvious to the District that Zabavsky was trying to engage in a cover-up as he failed to properly mark off the scene, preserve evidence, call in MCIU, and even spoiled the evidence by allowing vehicles to drive over the evidence. The negligent retention of Sutton and Zabavsky are examples of those officers who are allowed to work for the District in a manner that violates the civil rights of its citizens. It should

have been obvious to the officers of MCIU that the scene had been cleaned up prior to their investigation and thus, the District and the supervising officers were on notice of the cover-up and did nothing about it. It was only the USA Attorney Generals investigation of this case that has brought corrective action to the criminal pattern and practice of cover-ups that D.C. and its supervisory officers and other involved police officers have allowed such practices to be continued and repeated by failing to address the pattern and practice of targeting black bikers with deadly force.

272. A typical example can be found in the D.C. language of D.C.'s own "in house" report, "The Metropolitan Police Department and the Use of Deadly Force in typical bureaucratize cover-up language Office of the District of Columbia Auditor Report entitled "The Metropolitan Police Department and the Use of Deadly Force: Four Case Studies 2018 – 2019.", otherwise known as the "Bromwich Report" which fails to mention the group police practice of targeting black bikers with deadly force but nonetheless expounds with eloquence on the Robinson biker death case and misses the whole point of D.C.'s biker problem of targeting bikers on a group wide basis. .

273. Maybe had they done so, the Karon Hylton case might not have occurred.

274. It brilliant points out lower level problems but side steps any mention of the District being exposed to liability.

275. In breach of the aforementioned duties set forth herein, Defendant D.C. failed to supervise Sutton, Tejera, Ahmed Al-Shrawl, Novick and Zabavsky in a manner that would ensure that they were in conformity with the United States Constitution.

275. As a direct and proximate result of the negligence of Defendant D.C. with respect to its negligent hiring, retention, training and supervision of Defendant Officers Sutton

and Zabavsky, Decedent, his statutory beneficiaries, and his Estate suffered damages as described in this complaint.

276 The above referenced damages were the direct and proximate result of the negligence of Defendant D.C. in abrogating its duties to hire, retain, supervise and train officers who will correctly enforce the Constitution and civil rights of the citizens and occupants of D.C.

277. The damages sought under this count are proper pursuant to the District of Columbia Survival Act. The District is responsible under the doctrine respondeat superior for the damages inflicted upon Karon Hylton and his Estate.

Wherefore, Plaintiff, Z.J.B., by her Mother and Next Friend, Amaala Jones-Bey the Personal Representative of the Estate of Karon Hylton demands judgment against Defendant D.C. in the amount of $ 70,000,000 (seventy million dollars), plus prejudgment and post judgment interest, attorney's fees and other costs of this suit and such other relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff Demands A Trial By Jury

_____ /s/ _____

Plaintiff, Z.J.B. by Amaala Jones Bey, Next Friend and Mother of Z.J.B.

I ask for this:

_____ /s/ _____
David L. Shurtz, Esq.
1200 N Nash St. # 835
Arlington, VA  22209
(202) 617-9141
(703) 525-0720
dshurtz103@gmail.com
April 8, 2022