**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Amaala Jones-Bey       :
  Individually and as     :
  personal representative of the Estate :
  of Karon Hylton Brown.    :
             :
    Plaintiff       :
             :
v.          : Civil Action No. # 21-cv-02674 JMC
             :
District of Columbia     :
TERRENCE SUTTON, in his individual capacity :     :
ANDREW ZABAVSKY, in his individual capacity :
CARLOS TEJERA, in his individual capacity :
AHMED AL-SHRAWL, in his individual capacity :
CORY NOVICK, in his individual capacity :
ANDREW ZABAVSKY, in his indivdulal capacity :

:

PLAINTIFF'S Z.J-B OPPOSITION TO INTERVENER KAREN HYLTON'S
MOTION TO INTERVENE

Comes now, Plaintiff, Z.B-J by her next friend, mother and Personal

Representative ("PR") and counsel, and in Opposition to Intervener's,

Karen Hylton's Motion to Intervene, Plaintiff states as follows:

INTRODUCTION

At the outset, it should be noted that the dearth of cases departing

from the strict statutory inheritance line are so few, it is obvious that there is

a strong presumption favoring the allocation of inheritance pursuant to the

strict standard of the statutory language of descent.  In this case, the

statute clearly mandates that the inheritance should go to the child, Z.J.-B.

DC Code Section 19-306 Children to share equally.  "When the intestate

leaves children and no other descendants, the surplus is divided equally among them."

It is conceded that the Probate Court's grew out of the original Ecclesiastical Courts:

"

## "Ecclesiastical court - Wikipedia
https://en.wikipedia.org › wiki › Ecclesiastical_court

The **ecclesiastical courts** formerly had jurisdiction over the personal estates of deceased persons to grant **probate** or administration.

Thus, principles of equity apply to construct a fair result.  In the present case, we have a two year old child who lives in the home of a single mother just completing her school and out on her own with a new job. When the equities are weighed between a two year old child who has the rest of her life to look forward to under the guidance of a young mother versus a middle aged grandmother who has lived her best life, the equities of allocation are clear.  The statutory child should take over the exception suggested by the grandmother of the child and the grandmother's counsel. Since the grandmother has no inheritance under intestate succession, she should not be able to manage and dictate an alternate complaint; or any part of the Plaintiff's Jones-Bey's Complaint.

INTERVENER KAREN HYLTON HAS NO STANDING TO BE IN THE
USDC FOR DC FOR PURPOSES OF FILING A COMPLAINT AND/OR
MANAGING ONE

The Intervener's case before this Court is predominately a Wrongful
Death Complaint and its related Counts in the context of a civil rights milieu
where there are claims of Excessive Force and Due Process in violation of
the Constitution.  Two Parties initially claimed to be representing the Estate
of Karon Hylton.  Z.B.J. went through the appropriate protocols with the DC
Superior Court to qualify as the personal representative of the Estate of
Karon Hylton.  This was a long struggle because of things like the Probate
COVID Protocols.  Plaintiff's mom and PR, Amaala Jones-Bey, has
properly presented her Letters of Administration to this Court appointing
Amaala Jones-Bey as the PR of the Estate of Karon Hylton.  Exhibit 1.
Amaala Jones Bey is the only one who has presented appropriate
credentials to file a Complaint on behalf of the Estate of Karon Hylton in the
USDC for DC.

Juxtaposed to this, on October 12, 2021, Karen Hylton, filed her
Complaint and falsely represented to this court that she was the PR of the
Estate of Karon Hylton.  She certainly knew that being a PR was a

3

necessary requirement for proceeding with a Wrongful Death Complaint in the USDC for DC.  Furthermore, she knew that she was not a PR!

From 10/21/2021 until 6/10/2022 she has perpetrated this fraud upon this court that she was the PR of the Estate of Karon Hylton.  This is inclusive of retaining counsel on 3/31/2022.  This even included a period of time passed the 4/28/2022 conference of this court.  While Plaintiff Jones-Bey has presented her credentials to this Court; Intervener Karen Hylton has presented nothing from the Probate Division of the DC Superior Court. Even to this day, Karen Hylton's counsel has still not filed any documents with this court from the DC Superior Court Probate Division showing that Karen Hylton has some modicum of standing to proceed in this case on behalf of the decedent, Karon Hylton.

Since Plaintiff Jones-Bey was required to present papers from the Probate Division to have standing as a PR in charge of going forward on a Survival/Wrongful Death Claim, Intervener Karen Hylton should not be able to do through the back door, what she was prohibited from doing through the front door.  Since the Probate Court started out as a Court of Equity; Intervener's conduct must be Equitable.   Claiming to have standing when she has none should bar her from further representations that she is

qualified to present a Complaint in this Court, even as an Intervener.  This would be "unequitable".

Intervener Karen Hylton did not have standing to be before this Court with a Wrongful Death Complaint before as a PR; and she does not have standing from the DC Probate Division to be before the USDC for DC and filing a complaint as an Intervener now.  Filing a Complaint in the USDC for DC is exclusively within the prerogative of the Real PR; not within the prerogative of the putative bogus PR, Karen Hylton.

If this court were to allow two complaints covering the same facts, it would present an inexorable choice by this Court as to which complaint and which facts does this court chose for going forward with this case.  Since only one of parties has standing as contemplated by the DC Probate Court; the second complaint must be dismissed.  Furthermore, having made such false representations of being the PR for nine months, she should be sanction from purporting to have standing in this court to file a complaint now even as an Intervener, when she still has no standing authorized by the Probate Division to file a Complaint.

Plaintiff concedes that if she were not the mother of Karon Hylton's child, Karen Hylton would take priority.  Rather than establish her right which she claimed at this court's hearing, where Karen's counsel claimed

that  Z.J.-B. is not the child of Karon Hylton, her family's assertions have done quite the opposite in plain view of the entire District of Columbia via the Washington Post. On October 30, 2020, Karon Hylton and his family go on record acknowledging that Z.B-J. is Karon's daughter. Exhibit 2.   As recently as June 19, 2022, Karen Hylton admitted again that Z.J.-B. was her "baby", when she texted Amaala; "I knew you loved Karon and it shows in (name deleted due to being a minor) that's my baby and she's your baby please take care of her."  Exhibit 3.   Thus, both the father and mother of Z.J.-B. have acknowledged Z.J.-B's paternity as well as Karon himself acknowledging her paternity during his lifetime as set forth in the Washington Post October 30, 2020, article. Exhibit 2.

This court can recall that Ms. Jones-Bey agreed to taking a paternity test in its hearing on April 28, 2022, and no such paternity test has been paid for by the Intervener yet to the best of Plaintiff's knowledge.   The assertion that the Intervener's counsel has made to this court about Karon Hylton not being the father Z.B.-J.  have not come to fruition and appear to be in stark contrast to the actual position of the party he represents.

There are two points here: One, there is no need to do the paternity test if the Interveners are not contesting paternity.  The second is, that if they want to have standing in the USDC for DC, they must do the modicum

of presentation to establish standing to be in the USDC for DC.  No results have been presented to this Court that would challenge Amaala Jones-Bey from being the Probate Division's authorized PR.  If here is no such evidence, any other Complaint should not be permitted to be filed in tandem with Amaala Jones-Bey's Complaint.

It should be obvious to Intervener Hylton, that as a pre-requisite to filing a Complaint in the USDC for DC, the Intervener should be granted standing by the: Probate Court.  Since the Intervener has not risen to that standard, their complaint should be dismissed in this court.  The Intervener has not presented letters of administration to this Court from the Probate Division.  They have passed their time away making false representations to this USDC for DC Court that they were the proper PR and/or that by some miracle of transubstantiation, that they can do through the backdoor as an Intervener what they couldn't do through the front door.  If anything, the Intervener should establish their status as an Intervener with leave of Court in the DC Superior Court's Probate Division before they submit a complaint to the USDC for DC.  Filing facts which harm the real Plaintiff's case should not be tolerated by this court.

There are many reasons for this protocol.  Errors in judgment by the putative Intervener harm the real Plaintiff's case.  The Intervener is

presenting Karon Hylton as a drug dealer which is not the light which

should be presented by an Intervener because it pre-empts the

prerogatives of the legitimate Plaintiff, Z.J.-B.  At paragraph 27 on page 7

of Intervener Karen's Complaint, the Intervener states through her counsel,

"Sutton had evidently developed the view that Karon was a member of the

"Kennedy Street Crew" a small and informal organization that engaged in

small-scale drug dealing in Brightwood Park".

        Not only is this inappropriate on its face to usurp the place of the

legitimate PR, the Intervener has taken to "mind reading" regarding the

state of mind of Officer Sutton.   This is way out of bounds for anyone to do

in an effort to eject and/or compromise the legitimately filed Complaint by

the PR appointed by the DC Superior Court's Probate Division.

        There is no evidence whatsoever to conclude that Z.J-B was selling

drugs.  All the evidence supports the fact that he was looking for his

"Mercedes" keys.  Yet the Intervener further exaggerates the ownership of

the Mercedes in her brief as belonging to Karen Hylton and not Karon

Hylton.  The point being that an Intervener should not be allowed to ruin the

legitimate Plaintiff's case, by filling a complaint which redounds to reducing

the value of the legitimate Plaintiffs case by placing facts not authorized by

the real PR into the record that have not been proven or conceded by the

record or the real PR.  This is particularly true when the facts that are being

asserted are subject to speculation and "reading the mind" of the

Defendant Sutton.

### MAKING REFERENCE TO SETTLEMENT NEGOTIATIONS THAT WERE HELD IN PRIVATE, AS PART OF THE PUBLIC RECORD IS INAPPROPIATE

Another example of encroachment into Plaintiff's prerogative's is

when Karen's counsel coaxed DC's counsel in this case to discuss

settlement negotiations which Plaintiff's counsel had with the chief of the

civil division of the OAG, Chad Copeland.  The District of Columbia has an

adverse interest to Plaintiff.  Yet, the Intervener is using statements made

by Plaintiff's counsel that were intended as confidential with the Chief of the

Civil Division of the OAG to further the case of Karen Hylton.   Plaintiff

assumed that settlement negotiations with the OAG would be held in strict

confidence between the OAG and Plaintiff's PR.  There appears to be an

effort of the Intervener to intrude into the settlement negotiations by

establishing an ally connection with Plaintiff's Adversary, the District of

Columbia.  This concern is verified by Mr. Gernstein's Declaration which

was sent to me.  Exhibit 4.  This is true even though the Intervener has no

standing recognized by the D.C. Superior Courts, Probate Division.

Having an Adversary communicating to the Intervener's counsel about settlement discussions to the detriment of the legitimate Plaintiff is not something that Plaintiff should have to deal with in the USDC for DC. However, Mr. Gernstein characterizes my communication with the Civil Divisions OAG Office as "unusual" with depreciative overtones and also suggesting that the comments were not appropriate.

What is unusual about this case is that the Office of the United States Attorney General has charged Officer Sutton and his Supervisor, Andrew Zabavsky, with respective felonies. This is very rare. But it is a fact. Since the standard for a criminal charge against a police officer is a much higher standard of proof than proving civil negligence, it follows that there would be an understanding that because the officers met the higher standard to be charged with felonies, it would be permissible to discuss settlement at the negligence standard where the civil standards apply. The standard of proof for a negligence claim is far less than the standard at a minimum for a criminal case. Thus, there should be a mutual understanding of this disparity of proof and this could provide a basis for early settlement. I believe that the head of the civil division, Chad Copeland understood this disparity of proof rationale. If that is true, it gives both the Plaintiff and the Defendant the advantages of early settlement without the costs and grief of

protracted civil litigation.  This made sense to me.  So, Plaintiff need not apologize for something that makes practical sense.  For an adverse attorney, i.e. the OAG office, to even discuss with the Intervener's Counsel what I said to the head of the Civil Litigation in the context of settlement to a party adversary without my permission is startling to me.  This is what is "unusual.

PATERNITY TEST AND INTERVENER STATUS

Plaintiff has agreed to take a paternity test as expressed in open court on April 28, 2022.  Thus far, no test has been scheduled and it is the burden of the Intervener to do so

Yet, the Intervener wants their cake and to eat it too.  If they can't qualify as a Plaintiff, even though they have not established their interest in the Probate Division of the D.C. Superior Court, they want to have standing in the USDC for DC, something at this point which they have no right to do. The requirements for representing and an Estate are strict and rigid. Intervener has met none of them and hope to side step the Probate requirements and come directly to the USDC for DC.  Karen Hylton should not be able to side step these requirements by merely calling herself an Intervener.

Yet, the Intervener's status is discretionary with the court; not mandatory. If the Intervener wants to compromise the mandates of a statute of descent, and if the putative Intervener should be granted status to do so; it should be the DC Superior Court Probate Division, not the USDC for DC, to grant Intervener status. And even if it is only considered discretionary; Plaintiff urges that this court's discretion should refer the matter back to the Probate division to establish Intervener standards; especially when it comes to the results of the paternity test. If the Plaintiff must meet the high standard of becoming a PR by the gauntlet and rigors of the DC Probate Division, then the putative Intervener who wants to file a complaint must do likewise. She has not done so. Accordingly, the Intervener should not be able to compete with the PR over the management of the Estate of Karon Hylton case nor should the Intervenor have standing to determine who shares in the distribution of money in the USDC for DC, especially when there is not statutory authority for inheritance in the line of succession under the Code sections for distribution as a matter of right.   .

Yet, the Intervener tries to accomplish by a slide-of-hand in the USDC for DC what she has been unable to do on her own as she has no standing to present a complaint as a putative Plaintiff but does so anyway as an

Intervener.  The Intervener should be required to establish, at a minimum, her rights as an Intervener first before she is granted leave to file a complaint with facts that redound to diminish the value of Plaintiff's case.

## NEXT OF KIN

It appears that the Intervener is trying to obtain standing by proffering that she is the "Next" of kin.  However, according to the laws of intestate succession, she is not "Next".  That position was granted to Z.J.-B. by the DC Superior Courts Probate Division.  DC Code section 19-306. The very purpose to the laws of descent are to avoid issues of conflict between the line of succession of the heirs; not create more of them.  If Plaintiffs can avoid the strict requirements of the statute by merely "Intervening" we will have opened up the flood gates of potential "wanna-be" heirs.  This cannot be good public police.  And such a conclusion should only be granted in the most extraordinary cases; not where a 2 year old child will need every penny of the award now that his father will not be providing for him.

If the Intervener wants special status, they should first obtain such status by the Probate Division.  To that extent, any such efforts are destined to fail before a neutral tribunal because her factual assertions are so thin.  The Intervener purports to assert that because Karon has

supported his mother, Karen Hylton in the past, she is entitled to future support as "next of kin".

They use two examples, the first is the fact that Karon was found to have $ 3,156.00 on his person at the time of the collision.  If this was, as suggested by Karen and her counsel, from illicit drug sales, it is hard to imagine that Karen had a right to be supported from illegal drug sales. Furthermore, if the $ 3,156 was legitimate, then Intervener Karen had an obligation to give the money to the breast of the Probate Division of the DC Superior Court as to the resolution as to who was the proper heir.  Thus, while Intervener Karen Hylton was apparently absconding with the $ 3,156.00, she failed to establish her standing before the Probate Division where such sums should have been deposited.  This source of delay was Karen's own fault, not the fault of the DC Court system, nor the Plaintiff Z.B.-J., nor the District of Columbia.

Further, like absconding with cash assets of the Karon Hylton Estate, Hylton could have spent her efforts perfecting her standing to sue the District rather than lying to this Court about her PR status.  Plaintiff should not be disadvantaged because Intervener Karen Hylton failed to correctly assert her position to the DC Superior Court.  That is a consequence of her own neglect.  Yet, Intervener Karen wants USDC for DC to be sympathetic

to her lack of standing even though she falsely represented to this Court her PR Status and failed to follow the proper procedure to obtain standing in the USDC for DC.

Likewise, the second asset that the Intervener points to as evidence of support also fails. The Mercedes which Karen claims to have been given by Karon prior to his death, was the very Mercedes of which Karon was looking for the keys. At the time of Karon's death, Karon was the owner/possessor/driver of the Mercedes.

According to Amaala Jones-Bey, the Mercedes had paper tags that had nothing to do with Karen Hylton. Each time that Intervener Karen refers to the Mercedes, reference is made to "his car" and "his keys to this car", not Karen's. Intervener is has asserted no solid proof that she was the lawful owner of the Mercedes at the time of Karon's death, nor has she provided a modicum of proof that Karon was charitably supporting his mother.

Thus far, all we have is her lies about her being the PR of the Estate, references to the $ 3,156 which was Karon's and not Karen's at the time of his death, and a Mercedes car that no proof has been proffered that she was ever the owner of the Mercedes prior to her death. And all indications are that she took both the $ 3,156 and the Mercedes to the detriment of the

Estate of Z.B-J.  This is hardly the standard of proof sufficient to establish Intervener Karen as a next of kin that was worthy of support.  To the contrary, if Karen Hylton's contribution to this cause was the purloining of the assets of the estate, she should be disqualified as both a PR and as an Intervener in charge of a complaint.

It is true that Karen did receive a monthly payment from Karon Hylton.  But that was not support.  This payment was for rent.  Both Amaala Jones-Bey and Karon Hylton lived at Karen Hylton's home.  The payments Intervener Karen received was for rent, not general unattributed support. She can still rent out her apartment just like she did to Amaala Jones-Bey and her son Karon Hylton.  Rather than making a charitable gesture to Karon as his son and girlfriend by providing free rent, showing it was on the basis of close association, that payment was for rent.  It was owed and due monthly.  Karon paid the rent monthly.

It has already been determined that Amaala Jones-Bey has the right to present the case of Karon Hylton to the jury/trier of fact.  To the extent that Karen Hylton's claims are in conflict with those of those of the PR's decisions, the PR's decision must control.   Without permission from the PR of the Estate of Karon Hylton, Karen and her counsel, are doing an end around the position of the estate.  This is why the claims of the non-PR

must give way to the legitimate PR.  Even under the most favorable interpretation of facts to the Intervener, it is the position of the PR that controls in the USDC for DC.   Otherwise, putative Plaintiffs could assert positions which erode and undermine the position of the PR, merely by asserting Intervener status.

For example, Karen Hylton and her counsel have taken upon themselves to characterize the police chase as an officer chasing a drug dealer.  There are no facts in this case to support that Karen Hylton was engaged in selling drugs at the time of the collision.  Not even Officer Sutton characterized the chase as having to do with selling drugs.  Officer Sutton alleges he was concerned that Karon Hylton might be carrying a gun.  Yet, Intervener Karen Hylton takes it upon herself to cast a dark shadow on the reputation of Karon by saying in paragraph 27, "Sutton had evidently developed the view that Karon was a member of the "Kennedy Street Crew" a small and informal organization that engaged in small – scale drug dealing in Brightwood Park."

Such dispersions are not appropriate by an Intervener; especially when there is no approval from the Plaintiff.  Plaintiff should be the one in control of the complaint, not an interloper.  All accounts agree that Karon Hylton was borrowing a legal moped from a friend so that he could find the

keys to his car; the very Mercedes that Karen is claiming to be hers.  Even in Intervener Karen Hylton's Complaint, they appear to concede that the Mercedes belonged to Karon, not to Karen.  On page 8 of the Intevener's brief paragraph 33, Intervener Karen Hylton states, "33. Sometime during the evening, Karon realized that his car keys were missing, …"  He was looking for the car keys that fit the Mercedes that Karen claims was hers.  If the car was Karen's, why did her counsel refer to the lost key as "his car keys" the key to the Mercedes that was parked in the vicinity of Kennedy Street.  Once again, in paragraph 36, Intervener Karen refers to looking "for his keys". On page 12 in paragraph 62,  "Ruffin explained that Karon was borrowing his Moped to look for "his keys" not Karen's keys.

In an effort to create credibility for claiming that Intervener Karen had standing, Karen asserts on page 15 in paragraph 86 "He (Karon) had recently given her (Karen) a Mercedes sedan.  This Mercedes can only be the Mercedes for which Karon was looking for the keys.  Even Intervener Karen asserts that Karon was looking for "his" keys, not his mother's keys. The Mercedes was parked on Kennedy Street near the location of the collision.  Intervener Karen has introduced no tangible evidence that Karon gave her this car to Karen prior to his death.  Why wouldn't Karen be the one looking for the keys if it was her car?  The car had paper tags and was

not titled in Karen's name according to Amaala Jones-Bey.  While Jones-Bey did not know in whose name the car was titled, there is no evidence to suggest that the Mercedes belonged to Karen Hylton before Karon's death. If the Intervener is making such bold claims, one would think that  a modicum of proof would be provided.  None has been provided.

What happened to the car appears to be the same thing that happened to the $ 3,156 found in Karon's pocket.  It never made it to the Probate Division to determine whose property was the $ 3,156 and the Mercedes.  According to Amaala Jones-Bey, Karen had the car towed to her location and was driving it after Karon's death.  Yet this was precisely the time that Amaala needed the car the most to take care of her young child, Z.B.-J.  Yet Intervener Karen took the car as her own and left Z.B.-J. stranded.    There is no proof before the Probate Division that this vehicle was ever given to Intervener Karen.   Plaintiff Z.B-J. demands strict proof of any assertions that the $ 3,156 and the Mercedes belonged to Karen at the time of Karon's death.  Rather than carefully pleading and proving ownership, Karen Hylton's style is more of the nature found in the "Hortance Funeral Scene" in Zorba the Greek

https://youtu.be/qvEoQ8H7tjA  where the attendees

respectfully mourn the loss of their close associate while yet alive; but when movie decedent  passes, they begin to pillage.

There is some basis to conclude that Karon did give his mother money.  But it was for rent.  He and Amaala were living with Karen Hylton and Karen Hylton was charging them rent. This was a quid pro quo, i.e. a bargained for exchange, not a subsidy.  There is no proof that the Mercedes was Karen's before the biker crash; there is no evidence that Karon intended to give Karen the $ 3,156.  These are the two reasons that the Intervener Karen asserts that there is a history of support for Karen. These are assertions Karen gave that are not supported by facts.  Since they form no basis for a division of Karon's Estate Property, even if this court allowed Karen to bypass the DC Probate Division, the proof she cites, i.e. the $ 3,156 and the Mercedes, does not rise to the level of proof of support sufficient to grant Karen Intervener Status.

There is no reference in this dialogue to the Mercedes as being Karen's car.  Once again, in Interveners filings, there is no reference to Karen using the Mercedes as her car prior to Karon's death.  In each reference, even in Interveners own Motion to Intervene and Memorandum of Points and Authority, the Intervener Karen refers says, "He was using

the moped to look for his misplace car keys on the street or sidewalk around Kennedy Street."  Intervener Karen is not referring to a generic set of keys, she is referring to "his misplaced car keys on the Street or sidewalk around Kennedy Street, northwest in Brightwood Park".  While Karon was alive, he used it as his car.  Amaala would know as that is the car that was used to transport her for the errands she had to run.

According to Amaala Jones-Bey, this Mercedes had paper tags.  If Karen has a claim to this car, let her produce the documents that were related to the paper tags that have her name on them.  The car should have been turned over to the Probate Division if there was a legitimate dispute as to who had *title* to the Mercedes, Karen Hylton or the Estate of Karon Hylton.

Likewise, Karen Hylton makes reference to the $ 3,156.00.  This was cash that was discovered on Karon Hylton's person.  This is clearly money that should have been deposited with the Probate Division as an asset of the Estate of Karon Hylton.  It is clear from the Intervener's filings that they knew that this money was found on Karon Hylton and this money has never been deposited in the breast of the DC Probate Court.  And if Karen Hylton claimed to have an ownership interest in the Mercedes at the time of Karon's death, Karen Hylton had a duty to present that vehicle to the

Probate Division as property inherited from Karon Hylton.  There was no such presentation.

While it is Amaala's best memory that the paper tags on the Mercedes had nothing to do with Karen, Karen can retrace the transaction if it truly was purchased by or given to and/or titled in Karen's name.  The presumption is that it was not titled in Karen's name while Karon was alive and that she had to car towed from Kennedy Street vicinity, and took it as her own.

Karen has done damage to Plaintiff's case by filing facts inconsistent with the Plaintiff's best interest.  They had no standing to file such a complaint.  She should have established their intervener status before she ever filed her Complaint.  Filing a Complaint without standing twice is something that this Court should not countenance.  This Court was gracious in allowing Karen Hylton to remain involved in the instant case as it is assumed that if there is a possibility that the child is not Karon's that this point should be litigated.  But it should not be litigated in the USDC for DC.  It should be litigated in the DC Probate Court.

Taking it upon herself to assert facts in the instant case before the USDC for DC which are an anathema to the legitimate Plaintiff's case, is something worthy of sanctions.  Plaintiffs Motion for sanctions is still listed

as "pending".  This is just another example of the Plaintiff having no

standing to file a complaint and yet; they file another complaint when they

have no standing masquerading as an Intervener.  If they didn't know better

the first time, they certainly did the second time.

The purpose of Z.J-B's Complaint is to litigate the Survival/Wrongful

Death Claims in the USDC for DC.  It is not to parse out the shares of the

estate belonging to the potential heirs.  The purpose of the Z.J-B complaint

in the USDC for DC is to proceed against the MPD Defendant's.  Parsing

out the proceeds of the Estate are best left  to the Probate Division, the

Division that Intervener Karen managed to ignore until challenged by the

true PR, Z.B-J.

The order of descent is for the express purpose of cleaning up

controversies among relatives.  If the law of descent clearly makes

distinctions between levels of inheritance, those of first priority take.  DC's

law of descent places the interests of the progeny of the decedent above

the parents.  If the statute is so clear, why should this court depart from the

clearly defined statute.  Furthermore, since the 2-year-old life has a full life

to live and the challenger has already lived half of hers, the equities should

tilt to the child to whom the descent statute favors.

One would presume that when it comes to the interest of the child, the word "next" does in fact mean "next". If the child of Karon is closer in consanguinity to the intent of the DC laws of descent, there should be no reason to alter that statute, and give it another meaning other than its plain meaning.

There is abundant reason for the Probate Division to assume jurisdiction over disputes regarding inheritance. Since the assets of the estate, i.e. the $ 3,156 and the Mercedes should have been turned over to the Probate Division, there is no reason to give the Intervener another opportunity to take the money and run. The assets should be placed in the breast of the court and let the Probate Division parse out the proceeds if any are due and owing to the Intervener.

It is far better for the Probate Division to hear claims of the Intervener's status, especially when the Intervener has absconded with the assets that should have been placed in the breast of the Probate Division.

Intervener's request of a share of the assets of the Karon Hylton Estate has caused the PR and Next friend of the sole inheritor to reconsider her position of inheritance. Prior to Intervener Karen's request for a share of inheritance notwithstanding no clear statutory authority, giving Intervener Karen a share; Amaala decided to let her daughter

24

receive all of the proceeds.  However, Intervener Karen's request for a

bequest, has caused Amaala to request a share as the common law wife of

Karon Hylton if this Court decides to grant Karen Intervener status.

It was Amaala's intention to forego any inheritance so that her

daughter would get the full share.  But now that the Intervener Karen has

requested a share, it stands to reason that if Amaala Jones Bey qualified

as the common law wife, that would be two place holders in the line of

direct inheritance.  Thus, it would be more likely that all of the assets of the

Estate of Karon Hylton would go to Amaala's daughter if she took a share;

which would bump back the other relatives claiming an extended share.

Thus, Amaala's original intention of giving all of the inheritance to her

daughter would be preserved.  If this court holds that no share should be

given to Intervener Karen, she will stick with the current distribution.

BETTER TO LET PROBATE DIVISION PARSE OUT THE DISTRIBUTION

At the outset, intestate succession laws are designed so there is

order and consistency to rules of inheritance where there is no will.  Unless

otherwise construed to be a superior interest, the law of intestate

succession should control.  In the District of Columbia, the intent and

application of the law to this case is clear as is set forth in DC Code

section: Section 19-306 Children to share equally.  "When the intestate

leaves children and no other descendants, the surplus is divided equally among them."

Assuming arguendo, that there is the possibility that this framework should be expanded upon, it must occur for some compelling overriding reason that the intent of the intestacy statute be given a back seat to some overwhelming reason.  Otherwise, the plain language of the statute should control.  Furthermore, if there is a right of the mother, in this case, Karen Hylton to take a part of the intestate share, then shouldn't the husband take too?  And if the father of Karon, Charles Brown, is taking a share, shouldn't it be half of the share Karen is claiming?    According to Karen, the father is gainfully employed as an electrician.  Does this mean he is excluded from a share because he has an independent source of income?  What then are the criteria for exclusion and inclusion in a class.  Clearly, the Probate Division is better equipped and the more appropriate venue to resolve nuances of inheritance.  Far better to let the Probate Division divide up the proportions of inheritance and let the Plaintiff proceed to judgment against the Defendants.

All of these issues are best left to the Probate Division of the DC Superior Court and should not be made by the USDC for DC.  Perhaps the Intervener is not listening to her own arguments.  On page 11 of

Intervener's brief, entitled Motion to Intervene and Memorandum of Points and Authorities, wherein she states: "D.C. law, for example, provides that the probate court shall issue letters of administration to the following people in order: (B) the surviving spouse, domestic partner or children of the intestate decedent. "  This is the Interveners argument.  Plaintiff is proposing doing precisely what Intervener quotes.   Since there is one surviving child, all of the estate should go to the child under normal circumstances.  If Karen forces the issue, Amaala will qualify as the common law wife so that all of the shares go to Z.J.-B.

Further assuming arguendo that this Court has the power to alter its allocation to others beyond the statutory beneficiaries, shouldn't it be someone who, at a minimum, conformed to the protocols of the DC's Probate Procedures?   In order to qualify her original Complaint, Karen Hylton lied about her status of being the PR of the Estate of Karon Hylton. It is one thing to do so while no other competitor is waiting in the wings. But Amaala Jones Bey weathered the gauntlet of going through the Probate Division during the COVID period.  Both Intervener Karen or her counsel could have done the same, but chose only to go to the Probate Division after they realized that they had no standing to be in the Federal

Court and finally dismissed their Complaint on June 10, 2022, docket number 31.

Apparently, Karen Hylton knew early on about the $ 3,156.00 in Karon's pocket.  Did she present that cash to the Probate Division?  Karen Hylton also knew where Karon had parked his Mercedes.  She had it towed to a convenient location and has driven the vehicle as her car.  Yet, Amaala, the PR and her child Z.J.-B. needed a car to get around after the loss of Karon Hylton who drove them wherever they needed to go in that Mercedes.  At each turn, which it came time to respect the Court's prerogatives, and turn Karon's assets over to the Estate, she chose to avoid that result.  And she is still avoiding that result by trying to do in the USDC for DC what should be done in the Probate Division of the DC Superior Court.

At its heart, a Probate Court has equitable origins.  And those who want equity, must do equity.  Karen Hylton has lied to this court and taken the assets of the Estate in full view of their counsel.  No one from Intervener Karon's corner have tendered any assets to the Estate of Karon Hylton in the Probate Division.   There is no equitable reason to depart from the laws of intestate succession in this case.

Intervener Karen is a healthy adult. Her flare for the dramatic has been seen on nightly news capturing the protests against the MPD.  She has been healthy enough to be a wildcat on the front lines of the Protest Vigils.

One consideration which needs further clarity.  If the Court is inclined to grant Intervener Karen relief, the question is, does Karen take independently of what the court awards to Plaintiff Z.J-B such that it would be an add on; or is it the Court's position to just divide up the amount allocated to the Estate of Karon Hylton.  This is another reason why it is best for the Probate Division to divide of the shares of the Estate.  It would be overburdening to have Federal Court of Appeals hearing an appeal  and then send it back to the DC Probate Division when the case could be sent to the Probate Division off the break.

As mention above, Karen has managed to survive within the range of human experience according to her own epitaph herein stated.  She managed to have an apartment that is capable of rent.  Karon's father is apparently gainfully employed as an electrician.  However, the most defenseless heir is the approximately 2 year old child, Z.J.-B.  All things considered, and this court has equity roots, the distribution of the estate

should descend to the child who must go through life able to obtain an

education while being raised by a single mother, Amaala Jones-Bey.

Amaala has gotten her education and is a good example of what a

good mother should be.  She has a solid employment history

commensurate with a young woman of modest background.  The assets of

the estate should favor the very heir to which the statute bequeaths.  Since

the Probate Court is equitable in origin, the best allocation is the intended

beneficiary. Z.B.-J.

There is one more important point to reconcile, preferably in the

Probate Division.  Early on in this case, it was explained to Amaala Jones

Bey that she had a potential right of inheritance as a common law wife.

Ironically, she lived in Karen's dwelling for approximately 3 years where

Karon paid his mother rent so Karen has full understanding of Amaala's

residency with her son.  When it was explained to Amaala that she could

assert the right for inheritance as the common law wife of Karon, she

wanted her child to inherit all of it.  But now, since Karon's mother is trying

to compromise the assets that would go to Z.J.-B., rather than that money

going to Karon, Amaala will assert her right as a common law wife.  That

dispute is better left resolved in the Probate Division in the DC Court of

Appeals.  DC is better able to determine to if Amaala Jones-Bey reaches the status of a common law wife.

Even if one follows the logic of Intervener Karen Hylton, and assume that the court has the power to make those distinctions as to the order and extent of distribution, it should not be the USDC for DC to do it.  It should be for the local DC Court to resolve how the inheritance should descend. There is no reason that the appropriate heirs  can't be resolved in the DC Superior Court's Probate Division while the USDC is allowing the case to be prosecuted by the PR of the Estate appointed the DC Superior Court Probate Division.  Any other result, undermines the power and efficacy of the local jurisdictions court where such decisions should be made.  These issues can be decided before this case goes to trial.  It is likely that the Federal Case against the officers will proceed the civil litigation.  All equities favor that the Probate Division deciding how the Estate of Karon Hylton should be allocated.

Submitted by:


_____/s/_____

David L. Shurtz, Esq.
Counsel for Plaintiff, Z.B-J,
1200 N. Nash Street, # 835
Arlington, VA  22209
(202) 617-9141

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of the foregoing has been filed on the pacer system and sent to all relevant counsel on this 22nd day of June, 2022.


_____/s/_____
David L. Shurtz, Esq.