**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| AMAALA JONES-BEY, |
| *Plaintiff*, |
| v. |
| DISTRICT OF COLUMBIA, *et al.*, |
| *Defendants*. |

Civil Action No. 1:21-cv-02674-JMC

**DEFENDANT DISTRICT OF COLUMBIA'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**     1

**ARGUMENT**     1

**I.**     <u>**The Court Should Dismiss Plaintiff's § 1983 Claims Against the District.**</u>     1

    **A.**   <u>**Plaintiff's Arguments Related To Her Fourth Amendment Claims (Counts I, III, XI, and XIII) Are Unpersuasive**</u>     1

        **1.**   ***County of Sacramento v. Lewis*** **Is Indistinguishable From the Allegations in Plaintiff's Amended Complaint.**     1

        **2.**   **MPD Officers Did Not Establish a Roadblock, Making *Brower* Inapposite.**     3

        **3.**   **The Pleadings on Which Plaintiff Relies Do Not Plausibly State a Predicate Fourth Amendment Violation.**     4

    **B.**   <u>**If the Court Allows Plaintiff's Fourth Amendment Claims to Proceed, It Should Dismiss The Fifth Amendment Claims (Counts II, III, XII, and XIII).**</u>     6

    **C.**   <u>**Plaintiff and Plaintiff-Intervenor's Arguments Related To The Fifth Amendment Claims (Counts II, III, XII, and XIII) Are Unpersuasive.**</u>     7

        **1.**   **Enforcement of Traffic Regulations is a Legitimate Government Interest That Does Not Offend the Fifth Amendment.**     8

        **2.**   **General Orders Are Not Evidence of Constitutional Violations.**     9

        **3.**   **The Criminal Case Is Irrelevant To the Analysis of Whether Plaintiff Has Stated a Fifth Amendment Claim.**     9

        **4.**   **Plaintiff-Intervenor's Attempts to Distinguish The Facts Alleged From *County of Sacramento v. Lewis* and Its Progeny Are Unpersuasive.**     10

    **D.**   <u>**Plaintiff Failed To Respond To the District's Arguments And May Not Rely On Her Exhibit 2 to Save Her *Monell* Claim (Counts III and XIII).**</u>     13

II.     **The Court Should Dismiss Plaintiff's Common Law Claims.**                    **14**

      A.   **The Criminal Trial Against Officer Sutton and Lieutenant
        Zabavsky Is Irrelevant to Plaintiff's Failure to State a Claim
        of Common Law Assault, Battery, or Intentional Infliction of
        Emotional Distress (Counts V, VI, IX, XV, XVI, and XVIII.**          **14**

      B.   **The Subject Accident Does Not Establish a Claim of Negligent Hiring,
        Retention, Training, and Supervision (Counts X and IXX).**          **15**

      C.   **Plaintiff and Plaintiff-Intervenor Fail to State a Claim for Negligence.**   **16**

           1.   **Plaintiff Fails to Address the District's D.C. Code § 5–123.02,
            Negligence, and Negligent Infliction of Emotional Distress
            Arguments (Counts IV, VII, VIII, XIV, XVII).**               **16**

           2.   **Plaintiff Cannot Use An MPD General Order As a
            Negligence Per Se Standard (Counts IV and XIV).**            **17**

           3.   **Plaintiff-Intervenor Cannot Establish A Negligence Claim
            By Simply Redressing The Assault And Battery Claims
            (Counts IV and XIV).**                                       **18**

III.    **The Court Should Not Consider the Allegations In The Criminal Indictment
        In Evaluating The District's Motion to Dismiss.**                   **20**

**CONCLUSION**                                                              **21**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................... 5, 13, 15, 19

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015)....................................................................... 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 5

*Ben-Kotel v. Howard University*,
319 F.3d 532 (D.C. Cir. 2003)......................................................................... 6

*Brower v. Cnty. of Inyo*,
489 U.S. 593 (1989) ........................................................................................ 2, 3, 4

*Brown v. District of Columbia*,
390 F. Supp. 3d 114 (D.D.C. 2019)................................................................. 20

*Bushrod v. District of Columbia*,
521 F. Supp. 3d 1 (D.D.C. 2021)..................................................................... 15, 16

*Clark v. District of Columbia*,
708 A.2d 632 (D.C. 1997) ............................................................................... 18

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ........................................................................................Passim

*District of Columbia v. Chinn*,
839 A.2d 701 (D.C. 2003) ............................................................................... 19, 20

*District of Columbia v. White*,
442 A.2d 159 (1982)........................................................................................ 19

*EEOC v. St. Francis Xavier Parochial Sch.*,
117 F.3d 621 (D.C. Cir. 1997)......................................................................... 14

*English v. District of Columbia*,
651 F.3d 1 (D.C. Cir. 2011) ............................................................................. 5, 8, 9

*Galas v. McKee*,
801 F.2d 200 (6th Cir. 1986) ........................................................................... 3

*Graham v. Connor*,
490 U.S. 386 (1989) ........................................................................................ 6, 7

*Graves v. Thomas*,
450 F.3d 1215 (10th Cir. 2006) ....................................................................... 9

*H.R.H. Constr. Co. v. Conroy*,
411 F.2d 722 ................................................................................................... 17

*Hall  v. District of Columbia*,
308 F. Supp.3d................................................................................................. 7

*Harvey v. Kasco*,
109 F. Supp. 3d 173 (D.D.C. 2015)................................................................. 7

*Hinton v. Shaw Pittman Potts & Trowbridge*,
257 F. Supp. 2d 96 (D.D.C. 2003)................................................................... 15

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,
284 F. Supp. 2d 15 (D.D.C. 2003)................................................................... 17

*Hume v. Watson*,
   680 F. Supp. 2d 48 (D.D.C. 2010).................................................................................. 15

*J.C. v. District of Columbia*,
   199 A.3d 192 (D.C. 2018) ........................................................................................... 7

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004)....................................................................................... 21

*Kingdom v. City of Rivera Beach*,
   2005 WL 8156292 (S.D. Fla 2005) ............................................................................... 4

*Kingman Park Civic Ass'n v. Gray*,
   27 F. Supp. 3d 142 (D.D.C. 2014).................................................................................. 16

*Kornyo v. Gonzaga Coll. High Sch.*,
   308 F. Supp. 3d 212 (D.D.C. 2018) (finding argument about claims not brought in amended  10

*Lewis v. Drug Enf't Admin.*,
   777 F. Supp. 2d 151 (D.D.C. 2011)................................................................................ 20

*Matthews v. District of Columbia*,
   730 F. Supp. 2d 33 (D.D.C. 2010)................................................................................... 7

*Mitchell v. Craftworks Rests. & Breweries, Inc.*,
   2018 WL 5297815 (D.D.C. Oct. 25, 2018) ..................................................................... 6

*Monell v. New York City Dep't of Soc. Servs.*,
   436 U.S. (1978) ............................................................................................................. 1

*Morgan Distrib. Co., Inc., v. Unidynamic Corp.*,
   868 F.2d 992 (8th Cir.1989) ("It is axiomatic that a complaint may not be amended ............. 18

*Parker v. District of Columbia*,
   850 F.2d 708 (D.C. Cir. 1988)...................................................................................... 13

*Rice v. District of Columbia*,
   715 F. Supp. 2d 127 (D.D.C. 2010) ............................................................................... 18

*Rowe v. City of Marlow*,
   116 F.3d 1489 (10th Cir. 1997) .................................................................................... 4

*Spicer v. District of Columbia*,
   916 F. Supp. 2d 1 (D.D.C. 2013)................................................................................... 20

*Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.*,
   980 F.3d 109 (D.C. Cir. 2020)....................................................................................... 18

*Steen v. Meyers*,
   486 F.3d 1017 (7th Cir. 2007) ........................................................................... 5, 9, 11, 12

*United States v. Lanier*,
   520 U.S. 259 ................................................................................................................. 7

*United States v. Sutton*,
   2022 WL 13940371 (D.D.C. Oct. 23, 2022) ......................................................... 10, 15

*Wannall v. Honeywell, Inc.*,
   775 F.3d 425 (D.C. Cir. 2014)................................................................................. 13, 17

*Waterkeeper Alliance, Inc. v. Wheeler*,
   330 F.R.D. 1 (D.D.C. 2018) ................................................................................... 10, 12

*Woyotiwicz v. George Washington Univ.*,
   327 F. Supp. 3d 105 (D.D.C. 2018)............................................................................... 16

*Youssef v. 3636 Corp.*,
   777 A.2d 787 (D.C. 2001) ............................................................................................. 6

Statutes

D.C. Code §16–2701(b) ............................................................................................ 17
D.C. Code § 5–123.02 .......................................................................................... 2, 17

Rules

D.C. Court of Appeals Rule 49(c)(4) ...................................................................... 22
Fed. R. Civ. P. 8(a) .................................................................................................. 5
Fed. R. Civ. P. 24(c) .............................................................................................. 10

Regulations

18 DCMR § 2215.3 .................................................................................................. 9

## INTRODUCTION

Defendant District of Columbia moved to dismiss Plaintiff Amaala Jones-Bey's Amended Complaint [26] for failure to state a claim.  In her Opposition, Plaintiff argues she has, in fact, pled Fourth and Fifth Amendment *Monell* claims against the District.  But Plaintiff's arguments rely on inapposite cases and ignore precedent that requires dismissal of her federal claims against the District.  Plaintiff-Intervenor—despite not bringing any federal claim against the District, thus lacking standing—attempts to rescue Plaintiff's deficiencies, arguing that the Amended Complaint states a Fifth Amendment claim.  But Plaintiff's failure to plead a viable theory of municipal liability under *Monell* remains fatal to all her federal claims against the District.  *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 694 (1978).  Plaintiff also relies on the ongoing criminal proceedings against Officer Terence Sutton and Lieutenant Andrew Zabavsky, a misguided notion of judicial notice, allegations outside of her pleadings, and rhetoric to save her common law claims.  As explained below, Plaintiff (and Plaintiff-Intervenor's) arguments are unavailing, and the Court should dismiss the Amended Complaint.

## ARGUMENT

I.   **The Court Should Dismiss Plaintiff's § 1983 Claims Against the District.**

   A.   **Plaintiff's Arguments Related To Her Fourth Amendment Claims (Counts I, III, XI, and XIII) Are Unpersuasive.**

       1.   ***County of Sacramento v. Lewis* Is Indistinguishable From the Allegations in Plaintiff's Amended Complaint.**

The District's Motion to Dismiss [45] relied on *County of Sacramento v. Lewis,* 523 U.S. 833 (1998) as controlling law, requiring dismissal of the Fourth Amendment claims, arguing that no MPD officer seized Hylton-Brown.  District's Mot. [45] at 6.  Plaintiff's Opposition asserts that *Lewis* "was not a Fourth Amendment seizure case and its holding is limited to substantive

due process analysis." Pl.'s Opp'n [63] at 5, n.2. Plaintiff is incorrect. The Supreme Court in *Lewis* analyzed and decided Fourth Amendment issues. *Lewis,* 523 U.S. at 842–45. Before the Supreme Court commenced its Fifth Amendment analysis, it considered whether the Fourth Amendment applied, because "[s]ubstantive due process analysis is inappropriate in this case only if respondents' claim is 'covered by' the Fourth Amendment." *Id.* at 843. The Court then held that the Fourth Amendment did not apply because of factual circumstances, which are similar to the facts here. *Id.* at 843-44.

In *Lewis*, a police officer pursued a motorcyclist, in violation of a police general order, at speeds of over 100 miles per hour, through a residential neighborhood for a traffic violation. *Id.* at 837. The chase ended when a passenger fell off the motorcycle, and was hit and killed by the police car. *Id.* As the Supreme Court explained, there is no seizure when a "'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." *Id.* at 844 (quoting *Brower v. Cnty. of Inyo,* 489 U.S. 593, 596–597 (1989)). Although Plaintiff terms this set of facts "not remotely analogous" to those alleged in her Amended Complaint, Pl.'s Opp'n at 5, n.2, *Lewis* cannot reasonably be distinguished from the factual allegations in this case.

Here—similar to *Lewis*—officers pursued Hylton-Brown for a violation of District of Columbia traffic law. Am. Compl. [26] ¶¶ 41-42; Intervenor Compl. [31–1] ¶¶ 1, 39; District's Mot. at 5–7; *Lewis,* 523 U.S. at 837. The pursuit was allegedly made at excessive speeds, and in violation of a Metropolitan Police Department General Order, which Plaintiff alleges prohibited the pursuit. Am. Compl. ¶¶ 35, 43, 48. The decedent in *Lewis* died when he fell off the motorcycle, and was accidentally run over by the police vehicle. *Lewis*, 523 U.S. at 837. Here, Hylton-Brown died when he drove his moped into oncoming traffic where a civilian vehicle

struck him.  Am. Compl. [26] ¶¶ 144–145, 152, 252.  Plaintiff argues that, because of the

inherent dangerousness of the chase, "the tragic result" (*i.e.*, the collision with another vehicle)

was foreseeable.  Plaintiff believes this is especially true considering that MPD General Orders

were allegedly enacted to avoid such a tragedy.  Am. Compl. ¶ 58; Pl.'s Opp'n at 16–17.  But

this allegation does not place this case within the ambit of the Fourth Amendment.  Certainly, in

*Lewis,* it was foreseeable that a 100+ miles per hour pursuit of a traffic law violator in violation

of a police General Order could result in the passenger falling off the cycle and being killed.  The

Supreme Court's holding in *Lewis*—that the officer never seized the decedent because the

collision resulted from an accident—applies and controls in this case.  *Id.* at 843-44.  *See also*

*Galas v. McKee*, 801 F.2d 200, 203 (6th Cir. 1986) (no seizure where 100 mph chase caused

decedent's car to crash).

### 2. MPD Officers Did Not Establish a Roadblock, Making *Brower* Inapposite.

Plaintiff posits that the allegations of  her Amended Complaint establish a Fourth

Amendment seizure, not by the officers' use of physical force to restrain Hylton-Brown but by

"termination of freedom of movement."  Pl.'s Opp'n at 4–7.  In support of this theory, Plaintiff

relies on *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989).  *Id.*  In so doing, she takes the

Fourth Amendment test, that a violation occurs when there is a "governmental termination of

freedom of movement through means intentionally applied," out of context.  *Id*. at 597.

In *Brower*, during a high-speed chase, the police "(1) caused an 18–wheel tractor-trailer

to be placed across both lanes of a two-lane highway in the path of Brower's flight, (2)

'effectively concealed' this roadblock by placing it behind a curve and leaving it unilluminated,

and (3) positioned a police car, with its headlights on, between Brower's oncoming vehicle and

the truck, so that Brower would be 'blinded' on his approach."  *Id.* at 594.  The pursued vehicle

crashed into the roadblock, killing the driver.  *Id.*  The Ninth Circuit held that no seizure had

occurred.  *Id.*  But the Supreme Court reversed, holding that "[t]he complaint here sufficiently

allege[d] that respondents, under color of law, sought to stop Brower by means of a roadblock

and succeeded in doing so.  That [was] enough to constitute a 'seizure' within the meaning of the

Fourth Amendment."  *Id.* at 600.  Thus, because the police created the instrumentality causing

the collision (i.e., the roadblock), a seizure occurred when the fleeing suspect crashed into the

roadblock.  In that context, what occurred was a "governmental termination of freedom of

movement through means intentionally applied."  *Id*. at 597.

     Here, unlike the events in *Brower*, Hylton-Brown did not crash into an instrumentality

created by the police.  Rather, a civilian vehicle crashed into Hylton-Brown as he exited the

alley, and no allegation in the Amended Complaint suggests this civilian collided with Hylton-

Brown at the behest of the Officers or intended to strike him at all.  *See generally* Am. Compl.

[26].  Hylton-Brown did not collide with the "very instrumentality set in motion or put in place

in order to achieve that result."  *Id.* at 599.  Thus, the Court should dismiss Plaintiff's Fourth

Amendment claim because no MPD officer ever seized Hylton-Brown.  *See Rowe v. City of

Marlow*, 116 F.3d 1489 (10th Cir. 1997) (unpublished opinion) (no seizure where crash resulted

from officer chasing suspect on road ending in a "T" intersection).  *Cf. Kingdom v. City of Rivera

Beach*, Case No. 04-80042-CIV, 2005 WL 8156292, *3 (S.D. Fla 2005), aff'd, 154 Fed. Appx.

131 (11th Cir. 2005) (jury could find seizure where officer commanded motorists to block a lane

of traffic causing collision).

### 3.    The Pleadings on Which Plaintiff Relies Do Not Plausibly State a Predicate Fourth Amendment Violation.

     In her Opposition, Plaintiff directs the Court's attention to the allegations of her

Amended Complaint which she asserts plausibly establish a Fourth Amendment seizure.  Pl.'s

Opp'n at 6.  But these pleadings fall into three categories, all which fail to state a claim.  First, several of these paragraphs are legal conclusions, and labels couched as factual allegations, which fail to satisfy Fed. R. Civ. P. 8(a)'s factual pleading requirements.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation" ).  *See, e.g.*, Am. Compl. ¶ 16 ("Plaintiffs caused the death of Karon Hylton by their conscious disregard for an extreme risk of death or serious bodily injury.");  *see also id.* ¶¶ 88, 95, 136, 139, 144, 147, 166, 185, 197, 245.

Other paragraphs of Plaintiff's Amended Complaint allege that the officers' pursuit of Hylton-Brown, which allegedly violated MPD's General Order, resulted in Hylton-Brown fleeing into oncoming traffic and being killed.  *Id.* ¶¶ 19, 58, 60, 82 152, 164, 195, 234, 259.  But in *Lewis*, the fact that the officer pursued the suspect at high speeds, approaching 100 miles per hour, violated a General Order—like the MPD General Order cited by Plaintiff—played no role in the Court's determination of whether there was seizure.  *See Lewis*, 523 U.S. at 844-45.  Simply put, the officers' alleged violation of MPD's General Order, here, is not evidence of a constitutional violation.  *See English v. District of Columbia*, 651 F.3d 1, 9 (D.C. Cir. 2011) (MPD policy not relevant to whether a Fourth Amendment violation occurred); *Steen v. Meyers,* 486 F.3d 1017, 1022 (7th Cir. 2007) (local police policies not relevant to determination of whether constitution was violated).

Plaintiff cites to remaining allegations which allege that the officers knew or should have known that their pursuit of Hylton-Brown was dangerous and could result in a deadly accident.  *E.g.*, Am. Compl. ¶ 86 (Said officers who engaged in this chase knew or should have known of the dangers of vehicle pursuit increased the likelihood that Hylton-Brown would experience

harm by chasing him out of an alley onto a public street); *see also* ¶¶ 94, 131.  But concepts such as "knew or should have known' or "breach of duty" are related to negligence, not a constitutional violation.  *See Youssef v. 3636 Corp.*, 777 A.2d 787, 792 (D.C. 2001) (To prevail on a claim for negligence, the plaintiff "must establish a duty of care, a deviation from that duty, and a causal relationship between that deviation and an injury sustained by the plaintiff.").

**B.** **If the Court Allows Plaintiff's Fourth Amendment Claims to Proceed, It Should Dismiss The Fifth Amendment Claims (Counts II, III, XII, and XIII).[1]**

If the Court finds that the Plaintiff has alleged facts that plausibly give rise to a Fourth Amendment claim, it should dismiss the Fifth Amendment claims.  In *Graham v. Connor*, 490 U.S. 386 (1989), a plaintiff brought § 1983 Fourth and Fifth Amendment claims against police officers who allegedly used excessive force during an investigatory stop.  *Id.* at 388.  The Supreme Court held that:

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of

---

[1]     The District acknowledges that it did not advance this technical argument in its Motion to Dismiss.  Although a court may consider an argument advanced for the first time in a reply to be waived, there is flexibility to the rule.  *See Ben-Kotel v. Howard University*, 319 F.3d 532, 536 (D.C. Cir. 2003) ("we can entertain a newly-raised issue where injustice might otherwise result").  If the Court determines that Plaintiff has in-fact plead a Fourth Amendment claim, the District's argument that this decision would require dismissal of the Fifth Amendment claim has merit under controlling caselaw and should be reviewed by the Court.  Any prejudice to Plaintiff or Plaintiff-Intervenor can be cured by allowing them to file a surrebuttal to this issue only.  *See, e.g.*, *Mitchell v. Craftworks Rests. & Breweries, Inc.*, Civil Action No. 18-879 (RC), 2018 WL 5297815, at *7 (D.D.C. Oct. 25, 2018) (citing *Ben-Kotel v. Howard University*, 319 F.3d 532, 536 (D.C. Cir. 2003)) ("Though a degree of unfairness is inevitable whenever new evidence is presented in a reply, such unfairness can be mitigated by allowing the opposing party the opportunity to file a sur-reply.").

> "substantive due process," must be the guide for analyzing these claims.

*Id.* at 396; *see also United States v. Lanier,* 520 U.S. 259, 271, n. 7 (1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").  Here if the Court holds that Plaintiff's Amended Complaint states a Fourth Amendment violation, the Court should dismiss the Fifth Amendment substantive due process claims.  *See Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 35-36 (D.D.C. 2010) (Fifth Amendment claim merges with Fourth Amendment claim where complaint alleges that he was unlawfully strip-searched during course of an arrest); *Harvey v. Kasco*, 109 F. Supp. 3d 173, 175–77 (D.D.C. 2015) (Fifth Amendment claim merges into Fourth Amendment claim where Plaintiff alleges that he was assaulted while being arrested).  *See also J.C. v. District of Columbia*, 199 A.3d 192, 205 (D.C. 2018) (plaintiff may not simultaneously bring a substantive due process claim and Fourth Amendment claim where it is alleged that government agency seized their children without a warrant); *Cf. Hall  v. District of Columbia*, 308 F. Supp.3d 208 (D.D.C 2018 (*passim*) (Fifth Amendment does not merge into Fourth Amendment claim where facts giving rise to Fifth Amendment claim occurred subsequent to alleged false arrest).

### C.    Plaintiff and Plaintiff-Intervenor's Arguments Related To The Fifth Amendment Claims (Counts II, III, XII, and XIII) Are Unpersuasive.

Plaintiff's Opposition to dismissal of her Fifth Amendment claim is aptly described by Plaintiff-Intervenor as "confusing and sparsely supported."  Intervenor Opp'n at 2.[2]  While

---

[2]      Plaintiff's counsel, of course, takes a different view calling himself a "mastermind."  Pl. Opp'n at 21–22.

Plaintiff's Opposition is disorganized, and lacks legal analysis, perhaps its foremost flaw is that Plaintiff's Fifth Amendment discussion is mostly bombastic rhetoric that does nothing to inform the Court's decision.[3]  Nonetheless, Plaintiff's arguments lack merit.

### 1.     Enforcement of Traffic Regulations is a Legitimate Government Interest That Does Not Offend the Fifth Amendment.

First, Plaintiff incorrectly asserts that the officers' pursuit of Hylton-Brown violated his Fifth Amendment rights because the "pursuit occurred despite the fact that there was no nefarious criminal activity in plain view."  Pl.'s Opp'n at 10.  Plaintiff further argues that Hylton-Brown was "doing nothing wrong."  *Id*. at 11, 14.  But, as the Supreme Court found in *Lewis*, an officer may pursue a motorist in response to observing a traffic violation without running afoul of the Fifth Amendment.  *Lewis*, 523 U.S. at 854.  Plaintiff's argument that the officers gave chase, even though Hylton-Brown was "doing nothing," is belied by the allegations of her Amendment Complaint and the Complaint in Intervention.

Plaintiff's Amended Complaint alleges that "Officer Sutton was driving the car; Officers Tejera, Ahmed Al-Shrawl, and Novick were passengers."  Am. Compl.  ¶ 48.  Officer Sutton said, "Hey Karon," and Hylton-Brown responded, "What do you want?"  *Id.* ¶¶ 31–32.  Hylton-Brown then started to "drive off the block."  *Id.* ¶ 34.  Plaintiff-Intervenor's Complaint expands on these sparse allegations by pleading that "[Officer] Sutton's only legal valid reason to stop Karon was for violation of municipal traffic ordinance," and that Hylton-Brown sought to evade the MPD officers.  Intervenor Compl. ¶¶ 39, 41.  These allegations, taken together, assert that the officers saw Hylton-Brown driving a moped, in violation of District of Columbia traffic laws.  In

---

[3]     For example, the Opposition lapses into a rant, unconnected to her Amended Complaint, about the "cover-up culture of MPD" and the "deep conspiracies" run by MPD "to cover for the cops."  *Id.* at 21.  Similar outbursts are replete throughout Plaintiff's Fifth Amendment argument.

response, the officers pursued him, resulting in Hylton-Brown's fatal collision with a civilian

vehicle.  These allegations squarely place this case within the ambit of the Court's Fifth

Amendment analysis in *Lewis*, where the Supreme Court held a highspeed, fatal chase did not to

violate the substantive due process rights of the decedent.  *Lewis*, 523 U.S. 845-855.  Although

Plaintiff contends that the police should not enforce District of Columbia helmet laws by chasing

such violators, the bottom line is that, riding without a helmet, is a criminal violation of the

traffic laws.  *See* 18 DCMR § 2215.3.  Consequently, the officers' pursuit of Hylton-Brown

cannot be treated as "unjustifiable by any government interests."  *See Lewis,* 523 U.S. at 849;

*Steen v. Myers*, 486 F.3d 1017 (7th Cir. 2007); *Graves v. Thomas,* 450 F.3d 1215, 1223–24 (10th

Cir. 2006).

### 2.     General Orders Are Not Evidence of Constitutional Violations.

Plaintiff vehemently argues that the officers' alleged violation of MPD General Order

301.03—which limits the circumstances in which officers may engage in vehicular pursuits—

plausibly entitles her to relief as to her Fifth Amendment claim.  Pl.'s Opp'n at 17-21, 25.

Plaintiff offers no citation in support of this proposition of law, nor could she given that the law

is abundantly clear as to this issue:  A violation of a police department order cannot serve as

evidence of a constitutional violation.  *See English v. District of Columbia*, 651 F.3d 1, 9 (D.C.

Cir. 2011) (MPD policy not relevant to whether a constitutional violation occurred); *see also*

District's Mot. at 9.

### 3.     The Criminal Case Is Irrelevant To the Analysis of Whether Plaintiff Has Stated a Fifth Amendment Claim.

Both Plaintiff and Plaintiff-Intervenor assert that the second-degree homicide charge

against Officer Sutton amply establishes their plausible entitlement to relief as to the Fifth

Amendment claim.  Pl.'s Opp'n at 15-16; Intervenor Opp'n [66] at 4.[4]  They argue that because

Judge Friedman has not dismissed the indictment, he "found" that a jury could find malice.  *See*

Pl.'s Opp'n at 15.  But a closer look reveals that the criminal proceedings, and this civil lawsuit,

are the proverbial "apples and oranges."  In the criminal case, Officer Sutton moved for

exclusion of evidence related to his alleged violation of MPD General Order 301.03, which

limits the circumstances under which MPD officers can conduct vehicular pursuits.  *See United

States v. Sutton*, --- F. Supp. 3d ----, 2022 WL 13940371, at *2 (D.D.C. Oct. 23, 2022).  Officer

Sutton argued that his conduct could not be measured by his adherence to the General Order but

rather by his adherence to constitutional standards.  *Id.*  Judge Friedman denied Officer Sutton's

motion, noting "the government need not prove a constitutional violation to demonstrate that Mr.

Sutton's conduct violated the D.C. second degree murder statute.  Police officers like everyone

else are subject to generally applicable laws unless there's an express [exemption] made and the

Constitution does not give them an exemption."  *Id.* at *6 (internal citations and quotation marks

omitted).  In other words, the elements of a homicide charge are separate and apart from the

elements necessary to establish constitutional liability.

---

[4]      Fed. R. Civ. P. 24(c) requires a motion to intervene to "be accompanied by a pleading
that sets out the claim or defense for which intervention is sought."  Plaintiff-Intervenor's
Complaint explicitly stated she sought intervention on two counts of Plaintiff Jones-Bey's
Amended Complaint:  (I) the Fifth Amendment Due Process Clause *against the individual
defendants only* and (2) negligence against all defendants.  Intervenor Compl. at 15, 17.
Therefore, the Court should not consider any arguments advanced by Plaintiff-Intervenor in
support of the Fifth Amendment Claim against the District.  *Cf. Waterkeeper Alliance, Inc. v.
Wheeler*, 330 F.R.D. 1, 10 (D.D.C. 2018) (confining intervenor to arguments to the existing
claims and prohibiting raising new claims or collateral issues).  *See also Kornyo v. Gonzaga
Coll. High Sch.*, 308 F. Supp. 3d 212, 217 (D.D.C. 2018) (finding argument about claims not
brought in amended complaint to lack merit) ("The court will not . . . pretend[ ] Plaintiff asserted
other hypothetical claims.").

**4.      Plaintiff-Intervenor's Attempts to Distinguish The Facts Alleged From *County of Sacramento v. Lewis* and Its Progeny Are Unpersuasive.**

Plaintiff-Intervenor's Opposition tries to distinguish the facts in *Lewis* and *Steen* from the facts here.  First, Plaintiff-Intervenor argues that the chases in *Lewis* and *Steen* involved motorcycles capable of speeds up to 100 mph on highways, while Hylton-Brown's moped could not exceed 30 mph, and took place in a residential area and alley.  Intervenor Opp'n at 10. Thus—according to Plaintiff-Intervenor—Hylton-Brown posed little threat to the public while the pursuit involved great risk to Hylton-Brown.  These arguments miss the mark.  The substantial risk of harm in a police chase of 100 mph cannot be overstated.  Certainly, it is not less risky than a pursuit involving a moped moving at 30 mph.  Moreover, Hylton-Brown posed a risk of harm to pedestrians while speeding through an alley at 30 mph.  Intervenor Opp'n at 10. The degree of risk of harm in the chases in *Lewis* and *Steen* were no less risky than the pursuit at issue here.

Further, Plaintiff-Intervenor's argument that *Lewis* and *Steen* are inapplicable, because they were resolved by the trial courts at the summary judgment stage, is incorrect.  *Lewis* and its progeny set the bar for establishing a substantive due process claim involving police pursuits. The evidence established by those plaintiffs did not meet that bar, and the officers were granted summary judgment.  To survive dismissal, Plaintiff (and Plaintiff-Intervenor, derivatively) must plead plausible facts that take her claims beyond those that were established in *Lewis* and *Steen*, where the Supreme Court and Seventh Circuit, respectively, found neither pursuit met the shocks-the-conscious test.  *Lewis*, 523 U.S. at 854; *Steen*, 486 F.3d at 1022–1024.  As the District argued in its Motion, Plaintiff's Amended Complaint fails to meet this burden, and Plaintiff and Plaintiff-Intervenor's arguments are unpersuasive.

Finally, Plaintiff-Intervenor tries to distinguish *Steen* by asserting that Sutton had stopped Hylton-Brown before and unlawfully seized his money, that Sutton has a history of illegally chasing drivers on mopeds, and attempted to coverup the seriousness of Hylton-Brown's accident.  Intervenor Opp'n at 11.  But the "background" facts of *Steen* are strikingly similar to the "background" facts offered by Plaintiff-Intervenor here.  As described by the Seventh Circuit:

> We recount here the evidence that the appellants argue demonstrates that Myers's behavior shocks the conscience. First, they note the altercation between Myers and Hilbert that occurred a few months before the chase. Although they do not apparently argue that the incident itself is conscience-shocking, they offer it as proof of animosity and perhaps a nefarious motive. They argue that such a history, and Hilbert's apparent fear of Myers in its wake, might allow a jury to infer that Myers had an improper motive on the night in question. They also note the "cat-and-mouse" aspect to the events that immediately preceded the chase going so far as to characterize Myers's actions as stalking the plaintiffs. They further note that Myers could have prevented the chase if he had accosted the youths while they were still parked instead of waiting for confirmation of Hilbert's license status or to see them driving the motorcycle. They speculate that Myers was lying in wait to initiate the traffic stop at a place that would maximize embarrassment for Hilbert. They also criticize Myers's decision to initiate a high-speed chase once Hilbert fled.

*Steen*, 486 F.3d at 1022-23.  Plaintiff—and by extension Plaintiff-Intervenor—similarly attempt to rely on allegations of animosity in previous interactions, which the District's Motion argued are insufficient to establish bad intent in the pursuit itself.  *Steen*, 486 F.3d at 1022.  Indeed, the Seventh Circuit rejected several similar arguments, and instead focused on the events of the chase.  *Id.* at 1024.  As the Seventh Circuit noted, the Supreme Court in *Lewis* set the bar "awfully high" for a substantive due process claim arising from a vehicle pursuit.  *Steen*, 486 F.3d at 1025.  In affirming summary judgment, the Court assumed that the officer pursued at speeds exceeding 130 mph within one to three car lengths of the motorcycle.  *Id.* at 124.  Despite

12

this incredibly reckless chase, the Court, relying on *Lewis*, found no substantive due process violation by the officer. *Id*. at 121-22. Similarly, the alleged facts of the pursuit at issue cannot be distinguished from *Lewis* and *Steen*, and thus the Court should dismiss the Counts II, III, XII, XIII.

> **D.** **Plaintiff Failed To Respond To the District's Arguments And May Not Rely On Her Exhibit 2 to Save Her *Monell* Claim (Counts III and XIII).**

The District's Motion argued that Plaintiff's *Monell* claims fail because—despite Plaintiff's efforts to rely on a long list of affidavits and prior cases that plausibly give rise to municipal liability—all but one of the allegedly incidents are either too remote to be considered, or are factually distinct from the alleged facts here. District's Mot. at 18-21.[5] Plaintiff failed to respond to the substance of the District's argument, but instead simply stated, in conclusory terms, that "surely the 74 biker affidavit [sic] given to the lead counsel in Price and referenced in the Complaint is [sic] strong enough evidence to get past summary judgment for pattern and practice of targeting bikers with deadly force." Pl.'s. Opp'n at 25. This conclusory statement insufficiently responds to the District's arguments. *See Iqbal*, 556 U.S. at 678.

The District's Motion also argued that Plaintiff's *Monell* claims fail because she failed to properly plead "concentrated, fully packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists." *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988). Instead, Plaintiff's Amended Complaint incorrectly relies on remote and factually distinguishable incidents. Now, in her Opposition, Plaintiff attached an exhibit titled

---

[5] The District moved to dismiss Counts XI and XII because they are based solely on a theory of respondeat superior liability. *See* District's Mot. at 11. Plaintiff did not respond to this argument and thus the Court can—and should—treat it was conceded. *See, e.g.*, *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion to dismiss and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

"LIST OF BIKER STATEMENTS IN ORDER OF IMPORTANCE (WITH THE EXCEPTION

OF THE PRIORITY OF BIKER STATEMENTS 67 – 74 THAT WERE ADDED LATER

AFTER THE 1 st LIST WAS CREATED)." *See* Pl.'s Ex. 2 [63-1].  This exhibit appears to be

Plaintiff's counsel's characterizations of "statements."  *Id.*  No sworn affidavits have been

provided by Plaintiff, despite her allegations that she has hundreds of them.  *See* Am. Compl. ¶¶

61–71.  The Court should not consider the information in Plaintiff's Exhibit 2 because this bare-

bones summary of "statements" includes no facts alleged in the Amended Complaint, and was

not attached or incorporated by reference.  *See, e.g.*, *EEOC v. St. Francis Xavier Parochial Sch.*,

117 F.3d 621, 624 (D.C. Cir. 1997) (courts may only consider facts alleged in the complaint, any

documents either attached to or incorporated in the complaint, and matters of which they may

take judicial notice in ruling on a Rule 12(b)(6) motion).  Consequently, the Court should

dismiss Plaintiff's § 1983 claims against the District.[6]

## II.     The Court Should Dismiss Plaintiff's Common Law Claims.

### A.     The Criminal Trial Against Officer Sutton and Lieutenant Zabavsky Is Irrelevant to Plaintiff's Failure to State a Claim of Common Law Assault, Battery, or Intentional Infliction of Emotional Distress (Counts V, VI, IX, XV, XVI, and XVIII).

Plaintiff's Opposition argues that the ongoing criminal trial against Officer Sutton and

Lieutenant Zabavsky should preclude dismissal of the intentional torts of assault, battery, and

intentional infliction of emotional distress.  Pl.'s Opp'n at 26–27.  Plaintiff appears to argue—

without any caselaw—that if a jury in the criminal trial finds either officer acted with "malice"

---

[6]     Plaintiff-Intervenor merely states that she "disagrees" that the *Monell* claim should be dismissed but provides no argument or support for this assertion.  Intervenor Opp'n at 8, n.1.  As noted above, she does not bring any constitutional claims against the District.

then she herself has stated a claim for an intentional tort in this case.  Plaintiff conflates collateral estoppel with the pleading requirements, which she failed to meet here.

To clarify, only Officer Sutton was charged with Second Degree Murder.  *See, e.g.*, *United States v. Sutton*, --- F. Supp. 3d ----, 2022 WL 13940371, at *2 (D.D.C. Oct. 23, 2022). As Plaintiff concedes, no jury verdict has been rendered in the criminal trial as of the date of this filing.  Pl.'s Opp'n at 27.  Unless and until Officer Sutton is convicted on this charge, or pleads guilty, and all appeals have been exhausted, there is no preclusive effect in this case.  *See Bushrod v. District of Columbia*, 521 F. Supp. 3d 1, 14 (D.D.C. 2021) ("A criminal conviction is conclusive proof and operates as an estoppel on [a] defendant[ ] as to the facts supporting the conviction in a subsequent civil action.") (quoting *Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 (D.D.C. 2003)); *see also Hume v. Watson*, 680 F. Supp. 2d 48, 50–51 (D.D.C. 2010) (applying collateral estoppel for guilty pleas).

Regardless of the criminal trial or its outcome, Plaintiff must still state a claim in her Amended Complaint to proceed with her intentional tort claims.  *See Iqbal*, 556 U.S. at 678. And, as explained in the District's Motion to Dismiss, Plaintiff failed to do so.  *See* District's Mot. [54] at 17–18, 23–24.  Thus, the Court should dismiss Counts V, VI, XV, and XVI against the District.

### B.   The Subject Accident Does Not Establish a Claim of Negligent Hiring, Retention, Training, and Supervision (Counts X and IXX).

In support of Counts X and IXX, Plaintiff argues, "One need look no further than the instant incident to see the failings of Zabavsky and Sutton to train new officers," including that the MPD Officers provoked a chase, and ran seven stop signs during the incident.  Pl.'s Opp'n at 26.  But Plaintiff misunderstands the law:  The incident involving Karon Hylton-Brown cannot put MPD on notice *before* the incident, as required to maintain a claim of negligent retention,

training, or supervision.  District's Mot. at 20–21.  And Plaintiff has offered no argument or allegation about these five MPD Officers, or their hiring, to save her negligent hiring claim.

Instead, Plaintiff—using facts not found in her Amended Complaint—expounds on the pleadings from *Robinson v. District of Columbia*, Civ. Action No. 20-cv-00614, the so-called "Bromwich Report," and about the events of the subject incident on October 23, 2020.  The Court should not consider Plaintiff's new allegations, made in opposition to the District's Motion to Dismiss.  "It is well settled law that a plaintiff cannot amend her complaint by briefs in opposition to a motion to dismiss."  *Woyotiwicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 121 (D.D.C. 2018) (quoting *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014)).  Thus, the Court should not consider Plaintiff's pontification about any failings of Officer Pepperman—an officer not named or involved in this case—and MPD's Internal Affairs Division in *Robinson*.  The Court also should not consider Plaintiff's allegations that the passenger officers were "new recruits" engaged in a "training exercise."  Pl.'s Opp'n at 10, 15, 20, that MPD's Internal Affairs Division has a "cover-up culture," MPD's hierarchy "hire[d] the Bromwich Firm to create a careful cover-up finding fault with lower level bureaucrats while giving their bosses and body politic a free pass," or that MPD trains newer officers on how to violate its own general orders by engaging in police pursuits.  *Id.* at 26–27.

But, even if the Court were to consider Plaintiff's new allegations, as explained above and in the District's motion, the subject accident does not provide a basis for these negligent hiring, retention, training, and supervision claims to proceed.  Indeed, there is no allegation that the District had advance knowledge—*before* the October 23, 2020 incident—of any problematic or concerning behavior by the involved officers, or that they failed to conduct a reasonable

background check and investigation into them before their hiring.  The Court should thus dismiss

Counts X and IXX.

      **C.**      **<u>Plaintiff and Plaintiff-Intervenor Fail to State a Claim for Negligence.</u>**

        **1.**      **Plaintiff Fails to Address the District's D.C. Code § 5–123.02, Negligence, and Negligent Infliction of Emotional Distress Arguments (Counts IV, VII, VIII, XIV, XVII).**

Because Plaintiff's opposition fails to address the District's arguments that (1) D.C. Code

§ 5–123.02 is merely a reiteration of common law assault and battery, and she fails to allege the

Hylton-Brown was arrested or imprisoned; (2) that her negligence arguments are impermissibly

re-dressed her intentional tort claims under the guise of a negligence claim; (3) she cannot

recover emotional damages under the Wrongful Death Act. D.C. Code §16–2701(b); and (4) she

failed to state a claim for Negligent Infliction of Emotional Distress (NIED), this Court can—and

indeed should—treat those arguments as conceded.  *See Hopkins v. Women's Div., Gen. Bd. of

Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004)

("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain

arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to

address as conceded."); *see also Wannall*, 775 F.3d at 428.  The Court should therefore dismiss

Counts IV, VII, VIII, XIV, and XVII.

        **2.**      **Plaintiff Cannot Use An MPD General Order As a Negligence Per Se Standard (Counts IV and XIV).**

In her Opposition, Plaintiff incorrectly argues that a police general order, such as GO

OPS 301.03, can be used to establish a negligence per se claim.  Pl.'s Opp'n at 16-21.  Citing

*H.R.H. Constr. Co. v. Conroy*, 411 F.2d 722, 722-23 & n. 3 (D.C. Cir. 1969), Plaintiff argues

that "Municipal Regulations designed for the safety of the public from police vehicles . . . trigger

'negligence per se.'"  Pl.'s Opp'n at 17.  But the single case cited by Plaintiff is clearly

distinguishable, as it deals with uncontroverted violations of the District of Columbia Building Code and certain District of Columbia Minimum Wage and Industrial Safety Board regulations, *not* MPD general orders.  *See id*.  Unsurprisingly, Plaintiff ignores direct precedent establishing that MPD general orders are for internal use and do not establish a negligence per se standard of care.  *See Rice v. District of Columbia*, 715 F. Supp. 2d 127, 132 (D.D.C. 2010) (dismissing negligence per se claim based on MPD general order functions, which function as internal operating manuals); *Clark v. District of Columbia*, 708 A.2d 632, 636 (D.C. 1997) (internal agency procedure that are not statutes or regulations cannot embody the standard of care under a negligence per se theory).  And, despite her overarching assertion that "if the Order or Municipal Regulations serves to further and support constitutional objectives and are intentionally and factually grounded in these constitutional objectives, [civilians] should be able to use such orders and Municipal Regulations as the standard of care," Plaintiff cites no authority to support such a proposition.  Pl.'s Opp'n at 19-20.  The Court should therefore dismiss Plaintiff's negligence per se claims in Count IV and XIV.

The Court also should not entertain Plaintiff's attempt to move for leave to further amend her Complaint through her Opposition.  *See* Pl.'s Opp'n at 18 ("If this court requires Plaintiff to specifically plead the states 18 MR 2002 and 712 as a basis for negligence per se; plaintiff seeks leave to amend the complaint.").  Courts have long held that a plaintiff cannot amend his pleading through his opposition brief.  *See Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020); *see also Morgan Distrib. Co., Inc., v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir.1989) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").  Because Plaintiff did not timely or properly seek leave to amend, the Court should deny any request within her opposition.

18

### 3.    Plaintiff-Intervenor Cannot Establish A Negligence Claim By Simply Redressing The Assault And Battery Claims (Counts IV and XIV).

While Plaintiff fails to address the District's negligence arguments at all, Plaintiff-Intervenor asserts that the District's arguments fail because "the District conflates the Officer Defendants' intent *to chase* [Hylton-Brown] with their intent *to kill* [Hylton-Brown], and without such conflation the Complaints state independent negligence claims that are not inconsistent with intentional torts."  Intervenor Opp'n at 9.  This misconstrues the District's argument.  The District argued that Plaintiff's negligence claim should be dismissed because—as well established caselaw provides—the allegations amount to assault and battery claims cloaked under guise of negligence.  And, because "it is impossible to negligently commit assault and/or battery as the states of mind are separate and incompatible."  *District of Columbia v. Chinn*, 839 A.2d 701, 708 (D.C. 2003).

In her opposition, Plaintiff-Intervenor tries to highlight what she contends are two distinct factual scenarios alleged in this case, in an attempt to show that the District's argument fails.  *See* Intervenor Opp'n at 9-12.  However, at no point does Plaintiff or Plaintiff-Intervenor allege that the officers intend to kill Hylton-Brown.  *See generally* Am. Compl.; Intervenor Compl.  When attempting to outline "two" factual scenarios, Plaintiff-Intervenor does not allege that the officers intended to "chase" Hylton-Brown in one scenario, and to "kill" Hylton-Brown in another.  *See* Intervenor Opp'n at 11.  Rather, Plaintiff-Intervenor states that the officers were "chasing" Hylton-Brown in both of her alleged scenarios.  *See id*.  Although Plaintiff-Intervenor argues one scenario was with the intent to illegally seize property and one was "for fun," these conclusory allegations fail to plead *how* these are not in fact a singular scenario, where MPD officers intentionally chased a fleeing individual.  *See Iqbal*, 556 U.S. at 678.  This is clearly distinguishable from *District of Columbia v. White*, 442 A.2d 159 (1982), where the plaintiff put

forward two theories:  one where an officer shot an unarmed man who had stopped fleeing and one where the officer fired in self-defense.  Accordingly, rather than establishing different theories, Plaintiff-Intervenor has reaffirmed there is a single scenario alleged—the officers intended to chase Hylton-Brown—and, more importantly, neither Plaintiff or Plaintiff-Intervenor distinguishes this chase from Plaintiff's assault and battery claim.  Therefore, because one cannot commit intentional acts, such as assault and battery, negligently, the Court should dismiss Plaintiff's claims in Count IV and XIV.  *See Spicer v. District of Columbia*, 916 F. Supp. 2d 1, 4 (D.D.C. 2013) (citing *Chinn*, 839 A.2d at 708)).

## III.    The Court Should Not Consider the Allegations In The Criminal Indictment In Evaluating The District's Motion to Dismiss.

In her Opposition, Plaintiff repeatedly refers to the criminal indictment against Officer Sutton and Lieutenant Zabavsky, stating "[t]here is no reason that this court can't take judicial notice of the Indictment, and the facts therein that have been charged to Sutton and Zabavsky." Pl.'s Opp'n at 15; *see also id.* at 2, 16, 27.  At the motion to dismiss stage, a court is "limited to the 'four corners of the complaint, as well as any documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies[,]" as well as "facts of which the Court may take judicial notice." *Brown v. District of Columbia*, 390 F. Supp. 3d 114, 122 (D.D.C. 2019).  Although the Court may take judicial notice of public records from other court proceedings, *see Lewis v. Drug Enf't Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011), the Court should not take judicial notice of the underlying, unproven factual allegations in the indictment.  By its very definition, an indictment is "the formal written accusation of a crime, made by a grand jury and presented to a court for prosecution against the accused person."  Indictment, Black's Law Dictionary (11th ed. 2019).  Thus, Plaintiff is not

entitled to a presumption that the allegations in the indictment are true and cannot use this document to fix her defective pleadings.

Further, Plaintiff's two references to the indictment are not enough to incorporate it by reference. *See* Am. Compl. ¶¶ 86 (alleging officers knew vehicle pursuit was dangerous leading to an indictment), 115 (calling the alleged failure to call Major Crash and driving over "the evidence" as a "complete dereliction of duty" that is "described in the indictment[.]"). Incorporation by reference can "amplify pleadings where the document is not attached by the plaintiff, but is 'referred to in the complaint and [ ] integral to [the plaintiff's] claim." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)).  But incorporation by reference is not without limits.  Here, the indictment is not integral to Plaintiff's claims.  Indeed, regardless of the results of the criminal proceedings, Plaintiff could still try to bring her civil claims.  If Plaintiff wants the Court to rely on the allegations in the indictment, not found in her Amended Complaint, she must seek leave to do so.  The Court should reject Plaintiff's wishful argument that "*all* facts contained in [the indictment] are automatically deemed facts alleged as part of the complaint." *Banneker Ventures, LLC*, 798 F.3d at 1133 (citation omitted).

## CONCLUSION

For these reasons, along with those in the District's initial motion, the Court dismiss Plaintiff's Amended Complaint against the District.

Date:  November 18, 2022                    Respectfully submitted,

                                            KARL A. RACINE
                                            Attorney General for the District of Columbia

                                            CHAD COPELAND
                                            Deputy Attorney General
                                            Civil Litigation Division

*/s/ Alicia M. Cullen*
ALICIA M. CULLEN [1015227]
Chief, Civil Litigation Division, Section III

*/s/ Katrina Seeman*
ROBERT A. DEBERARDINIS, JR. [335976]
Senior Assistant Attorney General
KATRINA SEEMAN [1671729]
JAMES A. WILEY[*]
Assistant Attorneys General
Civil Litigation Division
400 6th Street NW
Washington, D.C. 20001
Phone:  202-724-6642; 202-724-6607;
202-724-6511
Fax:  202-741-8895; 202-724-5917
Email:  robert.deberardinis@dc.gov;
katrina.seeman@dc.gov;
jim.wiley@dc.gov

*Counsel for Defendant District of Columbia*

---

[*]    Admitted to practice only in the State of California.  Practicing in the District of Columbia under the direct supervision of Alicia Cullen, a member of the D.C. Bar, under D.C. Court of Appeals Rule 49(c)(4).