## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMAALA JONES-BEY, individually and as personal representative of the Estate of Karon Hylton-Brown, | ) ) ) ) |
| Plaintiff, and | ) ) ) |
| KAREN HYLTON, | ) ) ) |
| Plaintiff-Intervenor, | ) ) Case No. 21-CV-02674 |
| v. | ) JURY TRIAL DEMANDED ) ) |
| THE DISTRICT OF COLUMBIA; TERRENCE SUTTON, in his individual capacity; ANDREW ZABAVSKY, in his individual capacity; CARLOS TEJERA, in his individual capacity; AHMED AL-SHRAWI, in his individual capacity; and CORY NOVICK, in his individual capacity, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MOTION TO CERTIFY DEFENDANT SUTTON'S APPEAL AS FRIVOLOUS AND RETAIN PARTIAL JURISDICTION PENDING APPEAL

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT AND MOTION ................................................. 2

II.  PROCEDURAL BACKGROUND ...................................................................... 2

III. ARGUMENT ...................................................................................................... 6

   A.   Legal Standard ......................................................................................... 6

   B.   Sutton's Appeal is Frivolous .................................................................... 8

   C.   Sutton's Appeal is Dilatory .................................................................... 10

   D.   This Court Would, As A Functional Matter, Retain Jurisdiction
        Only to Decide Summary Judgment ....................................................... 12

IV.  CONCLUSION ................................................................................................. 13

## I.        PRELIMINARY STATEMENT AND MOTION

On August 21, 2024, Defendant Terence Sutton, after unsuccessfully moving to stay the discovery conference in this matter, unsuccessfully moving to limit Plaintiff-Intervenor's right to file briefs in this matter, and unsuccessfully arguing that he "needs discovery" to determine whether qualified immunity entitles him to dismissal of this case (Tr. of Aug. 15, 2024 Hearing at 12:12), noticed an appeal of this Court's July 22 order denying qualified immunity (ECF No. 121.). Because Sutton's appeal is frivolous and dilatory, Plaintiff-Intervenor Karen Hylton respectfully requests that this Court certify the appeal as frivolous so that it may retain jurisdiction to decide the pending motion for summary judgment.[1] This is the course of action expressly contemplated under the Supreme Court's decision in *Behrens v. Pelletier*, 516 U.S. 299, 310–11 (1996), which approved this procedure and noted that "certif[ying] . . . immunity appeal[s] as 'frivolous' . . . enables the district court to retain jurisdiction pending summary disposition of the appeal, and thereby minimizes disruption of the ongoing proceedings."

## II.       PROCEDURAL BACKGROUND

Plaintiffs in this case alleged in the Complaints that Defendant Terence Sutton chased Karon Hylton-Brown to his death because Sutton was trying to steal from Hylton-Brown or, in the alternative, that he chased Hylton-Brown for fun. (*E.g.*, ECF No. 105 at 12 (describing allegations).) In a related criminal proceeding in this Court,

---

[1] Undersigned counsel emailed Sutton's counsel a draft of this Motion and an offer to confer on Friday, August 23rd, copying counsel for all parties. No one has responded as of this filing.

2

a jury of Sutton's peers convicted him of Hylton-Brown's murder in 2022. (*E.g.*, ECF No. 95 at 6 (describing procedural history).)

Sutton moved to dismiss the civil claims against him. (ECF No. 61.) He argued in relevant part that he is entitled to qualified immunity because the complaints "do[] not allege any intent to harm Hylton-Brown, or any other facts that amount to 'conscience shocking' conduct." (*Id.* at 11.) After the conviction, but not because of it, this Court denied Sutton's motion to dismiss on the basis of qualified immunity, reasoning that the well-pleaded allegations that he chased Hylton-Brown to his death to "steal money from him" and that he "initiated [a] dangerous car pursuit for sport" suffice to state a violation of clearly established law of which any reasonable officer would be aware. (ECF No. 105 at 12.)

Following the criminal conviction, Hylton and Jones-Bey moved for partial summary judgment on collateral estoppel against Sutton. Those motions are based solely on the fact of Sutton's conviction and the facts that the jury must have found to support it. In particular, the Plaintiffs argue that because the Constitution does not permit a police officer to commit murder on duty without civil consequence, and because the mental state the jury necessarily found in convicting Sutton is sufficient to prove a violation of the rule in *County of Sacramento v. Lewis*, Sutton is estopped to deny liability in this matter. (ECF No. 95.)

Sutton has refused to respond to Plaintiffs' summary-judgment motions. Instead, he has proposed a three-step plan that would result in a multi-year delay of all proceedings in this matter. First, he argued that because of his Fifth Amendment

rights, the case should "be stayed pending final resolution of the related criminal matter." (ECF No. 112 at 3.) That delay would take approximately 18 months, and perhaps longer: a final criminal judgment should be issued in mid-September; the median appeal in the D.C. Circuit takes 11 months to resolve from the filing of the notice of appeal,[2] and it could well be longer; and then a petition for certiorari to the Supreme Court would likely take approximately 6 months to resolve, and that too could take longer.

Second, after the criminal case is fully resolved, likely in 2026, Sutton argued that this Court must then immediately revisit qualified immunity *after* "allow[ing] limited discovery" (for three months) "on the issue and then set[ing] a briefing schedule to address this question of law." (ECF No. 112 at 3, 6.) Resolving that would likely take the Court to 2027.

Finally, only after both of those steps are completed, as Sutton has it, would the Court address the pending motions for summary judgment. According to Sutton, he cannot be made to respond to the question whether his conviction for murder defeats his qualified-immunity defense until the separate question whether Plaintiffs could prove the other factual allegations against him is resolved. (*E.g.*, Tr. at 12.)

This proposal made no sense: The question whether Sutton's murder conviction defeats summary judgment is entirely separate from the question whether the Complaint states a claim against him, and Plaintiffs offered to *stay all discovery*

---

[2] Data as of 2023. *See* https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2023.pdf

against Sutton pending resolution of the motions for summary judgment, which do not rely on any facts not already proven in a full and fair jury trial (*e.g.*, ECF No. 111). Sutton refused this offer. (Tr. at 12:12 ("We need discovery.").) Hylton argued that this was wasteful because even if Sutton could show that there is no genuine dispute of material fact regarding his intent to steal from Hylton-Brown or chase him for fun—and he will not be able to do this, of course, because Hylton has evidence of these facts—the fact of his conviction for murder is alone sufficient to defeat qualified immunity, and the two questions are completely separate. (*E.g.*, Tr. at 20–21.) If summary judgment is granted in Hylton's favor, the whole exercise will have been unnecessary. Sutton's refusal speaks volumes: requiring discovery before answering a summary-judgment motion on the law guarantees a multi-year delay; a summary-judgment decision could, and indeed likely will, result in a judgment against him in months.

This Court disagreed with Sutton and agreed with Hylton, reasoning that Sutton should respond to Hylton's motion for summary judgment by arguing that qualified immunity protects him but that qualified immunity does not protect him from merely responding. (*Id.* at 21:8–9 ("I agree with you.").) The Court accordingly set a deadline by which Sutton would file a motion to stay briefing on summary judgment or strike Hylton's motion (but not Plaintiff Amaala Jones-Bey's) for summary judgment; a hearing at which the Court would rule on that motion; and, if the motion was denied, a plan for briefing summary judgment, resolving it, and proceeding to trial if summary judgment was granted. (*See generally id.*)

Four days after Sutton's plan to completely stall the case failed, he went for the next best thing and filed a notice of interlocutory appeal challenging the district court's decision denying qualified immunity *at the motion to dismiss stage* to a police officer *convicted of murder for on-duty conduct*. (ECF No. 121.) Had Sutton's appeal been non-frivolous, it would stay proceedings in this Court against Sutton for a year or more.

## III.   ARGUMENT

Sutton has refused both (a) to abandon the frivolous argument that he is entitled to early dismissal despite his criminal murder conviction and (b) to halt his transparent attempts to delay this case for no valid reason. The courts have created a doctrine of certifying appeals as frivolous to deal with just this kind of procedural game. Hylton thus respectfully requests that this Court certify the appeal as frivolous and keep jurisdiction of this case for the purpose of adjudicating her and Jones-Bey's motions for summary judgment against Sutton (and against the District of Columbia, which has not noticed an interlocutory appeal). Hylton does not request that this Court permit discovery against Sutton at this point and does not request that this Court require the other individual defendants to participate in this case at all.

### A.   Legal Standard

Denials of qualified immunity on the basis that pleaded facts do not state a violation of clearly established law are appealable. *Behrens v. Pelletier*, 516 U.S. 299, 310–11 (1996). Although ordinarily a district court loses jurisdiction of all appealed matters pending resolution of the appeal, there is an exception in cases of denials of qualified immunity "enable[ing] . . . district court[s] to retain jurisdiction pending

summary disposition of the appeal, and thereby minimize the disruption of the ongoing proceedings." *Id.* at 310–311. The exception is necessary because requiring all district court proceedings to cease upon the filing of *any* appeal contesting the denial of qualified immunity invites "abuse." *Id.* "Defendants may take qualified immunity appeals for tactical as well as strategic reasons: disappointed by the denial of a continuance, they may help themselves to a postponement by lodging a notice of appeal." *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 399 (5th Cir. 2017) (citing *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989)); *see also* CHARLES ALAN WRIGHT ET AL, *Immunity Appeals—Trial Court Action Pending Appeal*, *in* 15A FEDERAL PRACTICE AND PROCEDURE § 3914.10.8 (3d ed. 2024).

Retention of jurisdiction in these circumstances is appropriate where the appeal "is either frivolous or dilatory." *Stewart v. Donges*, 915 F.2d 572, 573 (10th Cir. 1990); *Apostol*, 870 F.2d at 1339. To retain jurisdiction, district courts in the first instance "certif[y]" the appeal as "frivolous or dilatory" before appellate briefing is filed. *Id.* If defendants are dissatisfied with the district court's decision to retain jurisdiction, they can apply immediately to the appellate court for a stay pending resolution of their appeals. *Chuman v. Wright*, 960 F.2d 104, 105 n.1 (citing *Apostol*, 870 F.2d at 1340). "The point of [this] procedure . . . is to prevent a defendant from disrupting the district court's trial schedule by filing a frivolous appeal." *Chan v. Wodnicki*, 67 F.3d 137, 139 (7th Cir. 1995).

Most cases applying the *Behrens* procedure arise when a defendant frivolously appeals denial of *summary judgment* and seeks to delay *trial. E.g.*, *Langley v. Adams*

*County*, 987 F.2d 1473, 1477 (10th Cir. 1993); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992); *Stewart*, 915 F.2d at 573; *see also Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). Indeed "successive pretrial assertions of immunity seem to be a rare occurrence," *Behrens*, 516 U.S. at 310, likely because "[t]he incentive . . . for public officials," at least those who genuinely seek to resolve claims without litigation burdens and whose counsel are not paid hourly by a third-party, "is to wait for a point in the case when they have a chance to dispose of all the claims against them." *May v. Sheahan*, 226 F.3d 876, 881 (7th Cir. 2000). The cases cited above all approve of the certification procedure where the consequence is a defendant facing a full trial on the merits and possible judgment. Where, as here, defendants are asked to do no more than respond to a motion, the burdens imposed by a certification are even smaller and the efficiency gains even greater. *Cf. id.*

### B.   Sutton's Appeal is Frivolous

This Court's denial of the motion to dismiss on qualified immunity grounds was correct, and Sutton has no non-frivolous argument for reversal. This Court ruled that the Complaints stated a claim sufficient to survive qualified immunity because, very straightforwardly, no officer could possibly have believed that he is entitled to chase a man to his death to "steal money from him" or "initiate[] [a] dangerous car pursuit for sport." (ECF No. 105 at 12.) Although we have not yet seen whatever Sutton has to say on that subject, this Court's "disposition is so plainly correct that nothing can be said on the other side." *BancPass, Inc.*, 863 F.3d at 399.

Indeed, Sutton implicitly conceded this by insisting on discovery before reasserting qualified immunity. He cannot contend that Plaintiffs' allegations

against him aren't well-pleaded: they are specific, straightforward, and supported by context. Nor can he contend that one must plead intent to cause "physical harm," because that contention runs straight into the Supreme Court's statement in *Sacramento v. Lewis* that an officer violates the constitution when he chases someone "with intent to harm suspects physically *or to worsen their legal plight*," 523 U.S. at 854 (emphasis added), and it is also wrong on its face—police officers are not allowed under the Constitution to try to steal from people or harass them for fun and kill them in the process. Instead, Sutton has contended that there was no dispute *of fact* that he intended only to issue a citation for not wearing a helmet (*compare* ECF No. 105 at 11–12, *with* ECF No. 61 at 8 (motion to dismiss)), but this ignores Plaintiffs' well-pleaded allegations, based on observations of prior instances, that he intended to steal from Hylton-Brown or chased him for sport, and it misstates the legal standard anyway. Sutton never argued, nor could he, that the allegations are implausible or insufficiently pleaded. Accepted as true, as they must be, they are sufficient to survive qualified immunity, and there is no good faith argument to the contrary.

There is also objective evidence that the allegations are plausible. To convict Sutton of *murder*, the jury in his criminal case necessarily concluded that he was not acting reasonably to pursue a legitimate law-enforcement objective. (*E.g.*, ECF No. 95 at 22–23.) That doesn't leave him any alternatives other than theft, sport, or some other unreasonable and malicious motive. This, Hylton argues, is alone sufficient to defeat qualified immunity, but at the very least Hylton's clearly stated allegations of these facts are *plausible*. And Hylton's pleading is not conclusory; it is conclusive.

Sutton's only arguments in favor of qualified immunity at the motion-to-dismiss stage, then—that pleading an intent to chase someone for theft or sport is insufficient to defeat qualified immunity and that Hylton has not plausibly *alleged* that this happened—are frivolous. There is simply no chance that a complaint alleging that a convicted murderer violated the constitutional rights of the victim is dismissed on qualified immunity grounds at the motion-to-dismiss stage—let alone where the complaint plausibly alleges crystal clear facts making the murder especially heinous. This Court should so certify.

## C.    Sutton's Appeal is Dilatory

Certification to retain jurisdiction is likely appropriate if the Court concludes that the appeal is frivolous (as it plainly is) alone, but to the extent required, this Court will also have no trouble concluding that the appeal was noticed for purpose of delaying summary-judgment briefing on the issue of whether Sutton is collaterally estopped from denying liability on the merits.

At the parties' discovery conference and the Rule 16 conference before this Court, Sutton contended (frivolously) that the issue of qualified immunity must be resolved *as a factual matter* before the legal question whether his conviction alone suffices to defeat qualified immunity can be answered. (Trans. at 12:9–13.) To that end, Sutton affirmatively resisted Hylton's offer to stay discovery. At no point during the conference did Sutton suggest that he intended to appeal this Court's motion-to-dismiss ruling. (*Id.*) Instead he sought to stay discovery because of his Fifth Amendment right to avoid self-incrimination, which relief Hylton consented to, and to delay briefing on summary judgment because

> [W]e're supposed to resolve qualified immunity first and
> then go through discovery and all these other things, and
> the issue is here is that in the way the complaint was pled
> and the way Your Honor ruled on qualified immunity,
> accepting the allegations of the complaint as true, that
> Officer Sutton was trying to rob Hylton-Brown, that could
> defeat qualified immunity. But that is a factual question
> that has nothing to do with the criminal case.

(*Id.* at 11:11–18.)

That makes no sense. Qualified immunity has been resolved—against Sutton. (ECF No. 105 at 12.) And if the facts of the criminal case "ha[ve] nothing to do" with the grounds on which he seeks to assert qualified immunity as a "factual" matter, what is the conceivable argument against responding to the un-related summary-judgment motion *on the grounds of qualified immunity*?

Faced, then, with the failure of this frivolous plan to delay summary judgment, Sutton went for the next best thing and filed an appeal, which—absent the certification requested here—would automatically stay everything in this Court pending a Court of Appeals decision, which would take about a year to decide, and perhaps longer. The alternative is simply filing a legal memorandum in response to Hylton's motion for summary judgment, and, if that motion is granted, taking an interlocutory appeal that would *a fortiori* resolve the appeal he has currently taken—Sutton, after all, will surely have a right to appeal a summary-judgment decision against him. *Mitchell v. Forsyth*, 472 U.S. 511 (1985). If this is not a dilatory appeal, it is hard to imagine what would be.

In the meantime, the only thing Sutton has been asked to do in this Court for the foreseeable future is (1) participate in voluntary mediation, which Sutton is free

to skip if he wants to, and (2) respond to the legal issue of whether summary judgment is appropriate. The parties have all agreed to stay all other proceedings pending resolution of the motion for summary judgment. There is simply no reason to delay those proceedings while the Court of Appeals addresses Sutton's frivolous appeal. If Sutton insists on proceeding with the frivolous appeal, then that appeal should proceed simultaneously with the ongoing district court proceedings.

### D. This Court Would, As A Functional Matter, Retain Jurisdiction Only to Decide Summary Judgment

Finally, Hylton wishes to clarify the very limited nature of this request. Hylton seeks no more than a prompt resolution of the motion for summary judgment, which, if granted, would likely entitle Sutton to an interlocutory appeal. (*E.g.*, Tr. at 34, 35.) An appeal from that ruling, Hylton acknowledges, would be handled "in the ordinary course." (*Id.*) Meanwhile, Defendant the District of Columbia cannot and has not appealed, so its duty to respond to Plaintiffs' motion for summary judgment remains. *E.g.*, *May*, 226 F.3d at 881. It is unclear, then, whether retention of jurisdiction even requires a full certification of frivolity, although one is warranted here. As explained above, this question has previously come up where a defendant must go *to trial* if the district court certifies the appeal as frivolous. Here, Sutton need only respond to a motion for summary judgment *the grant of which he can then immediately appeal*. The merits of certification here are even more obvious than in the published cases.

Following the Court's ruling on summary judgment, the Court would then be able to assess how to proceed. If the Court grants the motion and Sutton appeals, then the Court might again have to consider whether to continue proceedings in

district court if any party so requests. If the Court denies the motion, it could then monitor the progress of the appeals in this case and Sutton's criminal case and set an appropriate schedule. But what it should not do—and what it need not do, given this request for certification and the legal standards governing it—is press the "stop" button and halt all civil proceedings against Sutton until his frivolous appeal, filed for the purpose of divesting this Court of jurisdiction, is decided.

## IV.   CONCLUSION

For the foregoing reasons, this Court should certify the appeal as frivolous and maintain jurisdiction over this case. The Court could then continue to adjudicate Plaintiffs' pending motions for summary judgment on collateral estoppel.

Respectfully submitted,

/s/ Charles Gerstein
Charles Gerstein
GERSTEIN HARROW LLP
1001 G Street NW, Suite 400E
Washington, DC 20001
charlie@gerstein-harrow.com
(202) 670-4809

/s/ Jason Harrow
Jason Harrow
GERSTEIN HARROW LLP
12100 Wilshire Blvd, Suite 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293(323) 744-5293