# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| AMAALA JONES-BEY,  individually : <br> and as personal representative of the : <br> Estate of Karon Hylton-Brown; : <br> : <br> Plaintiff, and : <br> : <br> KAREN HYLTON, : <br> : <br> Plaintiff Intervenor : <br> : <br> v. : <br> : <br> : <br> THE DISTRICT OF COLUMBIA; : <br> TERRENCE SUTTON, in his : <br> capacity; ANDREW ZABAVSKY, : <br> in his individual capacity; CARLOS : <br> TEJERA; in his individual capacity : <br> AHMED AL SHAWRI, in his : <br> Individual capacity; and CORY : <br> NOVICK, in his individual capacity : <br> : <br> Defendants : | Case No. 21-CV-02674-CJN <br><br> JURY TRIAL IS DEMANDED |

_____

**PLAINTIFF JOINS PLAINTIFF INTERVENOR'S MOTION TO CERTIFY
APPEAL AS FRIVOLOUS AND RETAIN PARTIAL JURISDICTION
PENDING DEFENDANT SUTTON'S INTERLOCUTORY APPEAL**

1

Comes now, Plaintiff, Amaala Jones Bey and joins Plaintiff Intervenor, in her Motion To Certify Sutton's Appeal as Frivolous  and retain partial jurisdiction pending Defendant Sutton's Interlocutory Appeal.  Plaintiff agrees and joins with the content of Plaintiff Intervenor's Motion. Thus, Plaintiff will argue aspects of this Motion that have not been yet addressed.

Appellant has filed his Appeal based on the strength of the Qualified Immunity argument. *Anderson v. Creighton*, 483 U.S. 635, 639, (1987) discusses the standard of quailed immunity. "Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.  See, e.g. Malley v. Briggs, 475 U.S. 335, 475 U.S. 341 (1986).  This right must be "clearly established" in the eyes of the officer and the law.   And the rules of Vehicle Pursuit were clearly established in General Order 301.03 that has been in effect since February 25, 2003!

Snow balls in hell would have a better chance of surviving than the argument that Officer Sutton has asserted.  No reasonable Court could find that Sutton's actions were consistent with immunity of any sort.  Sutton was a leader of his 4th Police District's "Crime Suppression Team" which consisted of 3 younger officers who were being "trained" by Sutton.  Now, did Sutton know that it was not OK to drive speeding the wrong way up an alley in an unmarked Police Vehicle chasing a legal Moped rider, who had the "right to flee" according the Hon. Paul Friedman, Exhibit 1, onto a busy street and after turning off his any warning devices to warn other drivers in the area?  Certainly, Sutton's criminal jury in 21-cr-598 shouts down this argument as all jurors found Sutton guilty **beyond a "reasonable doubt"**!   Sutton's actions are so far beyond the pale that his conduct was not even listed in the standards of the Vehicle Pursuit

General Order 301.03.  No one needed to put that going the wrong way up an alley at relatively high rate of speed chasing a legal Moped rider onto a busy street into this General Order 301.03 of the DC Police Department, because it is so obvious that such actions are more than unreasonable, they are unthinkable because it puts citizens at the risk of death and serious injury!

The Standards that the DC Metropolitan Police Department prohibits are far more minimalist than the egregious conduct of Sutton.  Now where do we find the Standards of Care of what Sutton knew regarding vehicle pursuits?  They are found in G.O. 301.03, February 25, 2003 version.  We should be able to assume that Sutton was familiar with this Police Vehicle Pursuit Order because Sutton's Supervisor, Andrew Zabavsky, the Officer in charge of all Crime Suppression teams in the 4th MPD District, put Sutton in charge of training these three younger officers in Sutton's unmarked undercover police car.

Well, the reason that G.O. 301.03 didn't specifically say to DC officers they can't drive up a one-way alley going the wrong way chasing a legal Moped onto a busy street without any emergency equipment or sirens activated, is because it is just too obvious.  What the most important general rule in 301.03 does say is: "When a member of the Metropolitan Police Department is engaged in a vehicular pursuit, the overriding responsibilities are the protection of human life and property." What does G.O.301.03 say is that  G.O. 301.03 prevents vehicle pursuits  unless the officers determine that the biker who  is fleeing is a fleeing felon GO. 301.03, III Definitions, 2.   These officers in Sutton's car could not have reasonably believed that they had probable cause to arrest Karon Hylton-Brown as a felon; because otherwise, they would have obtained an arrest warrant when their shift started; as they already knew that they were going to question Karon Hylton Brown "KHB" based on a "mere hunch" of a police officer who thought that KHB was acting "erratic" earlier in the day.  A female officer from a shift earlier in

the day suggested to Sutton's Crew to check Sutton out.  Checking someone out is not probable cause to arrest or detain!  Exhibit 1.

Yet, KHB was looking for his keys and was stationary at the time that Sutton and his crew pulled up on KHB.  KHB was not even driving when they pulled up on him.  Exhibit 2. Reggie Ruffin Statement.  Had they had probable cause to arrest him, they could have already had their warrant for his arrest.  Before they ever commenced the case, Sutton and his crew already knew they were going to stop him but they had no probable cause to do so.  Hon. Paul Friedman did not even consider a Terry Stop as permissible in this instance.   Exhibit 1

So, once again, what were the standards that Sutton were familiar with under G.O. 301.03, the Vehicle Pursuit General Order? Or as Hon. Paul Friedman allowed, what were the factors that could be used to determine the standard of care, along with other factors.   One of the clear prohibitions of G.O. 301.03 is that officers can't chase a motor vehicle, especially a legal Moped, in an unmarked police car for a "Traffic Offense".

Officers are only allowed to chase if "the felony" which is precipitating the chase is an actual or threatened attack which resulted or could have resulted, in death or serious bodily harm. IV. RULES. A. 2.   Furthermore, b. "Failure to immediately apprehend the person places a member, or the public in immediate danger of death or serious injury, AND 3. The lives of innocent people will not be endangered if the fleeing felon is pursued. There was no danger prior to Sutton's and his crew's chase and they created the danger, they didn't prevent the danger!

Not only does 301.03 admonish officers not to hit a moving car; 301.03 admonishes officers "nor shall the member attempt to force the vehicle into another object or off the roadway." Id. B.  Police Officers are also instructed to discontinue the chase if "the vehicular pursuit could result in an accident, property damage or injury to citizens.  Id. F. "Members are

4

prohibited from pursuing a vehicle for the purpose of affecting a stop for a traffic violation – in this case, the traffic infraction was not wearing a motorbike helmet during the period of active Covid, and there was more risk to catching Covid from a communal helmet supplied is the side satchel of this legally rented Moped.  Since this was the only slight traffic infraction that these officers used to conduct the vehicle pursuit, and he wasn't even driving when they pulled up on Karon Hylton Brown, Exhibit 2, so it was unlawful to initiate in Sutton's vehicle pursuit when Sutton, according to Hon. Paul Friedman, had a right to flee!  Exhibit 1.

G.O. 301.03 Id. C. instructs Officers to "… maintain a safe distance between their vehicle and the fleeing vehicle, to ensure that there is enough reaction time, should the fleeing vehicle suddenly turn or brake." *Id.* D.  Officers in vehicle pursuits are commanded to "Stop before entering the intersection when facing a red signal"; Especially, when there is "an intersection where four-way pedestrian walk signals are displayed." *Id*. V.D. The video of the chase demonstrates ignoring these admonitions to obey traffic signals.

VI. Procedures A. 6.   As soon as a Marked MPD vehicle arrives on scene, the unmarked vehicle driver must desist.   Right off the bat, Officer Sutton and Crew started the lead in chasing KBH in front of Zabavsky's marked Police vehicle right behind Sutton's unmarked police car. This is why Sutton's chase should never have begun because of the prohibition – "until a marked unit joins the pursuit, at which time, the operators of the below listed vehicles shall immediately discontinue their participation."  VI. A 6. & A 8.  These officers in Sutton's vehicle were in plain clothes and chasing vehicles should be occupied by full dressed Officer. *Id*. A.8

Officers are not allowed to chase, "When it becomes apparent that the vehicular pursuit could lead to unnecessary property damage, injury to citizen(s) or members of the Department." *Id*. 10

There was no reason to engage in a KHB chase because, if they had probable cause, they could have had a warrant issued against KHB because they knew KHB. But that was the problem in the first place, they didn't have probable cause to arrest KHB and were looking for excuses to provoke him!

Chases like this should not be conducted in areas of high traffic density due to the propensity for accidents. Id. A 10 f.

Id. F. p. 14, The chase should have been approved by the Watch Commander.   But not only was it not approved by the Watch Commander, Sutton engaged in a Cover-up and thus was charged and convicted with Conspiracy and Obstruction of Justice primarily for not coming clean with the Watch Commander.  How could a reasonable Court find qualified immunity if Sutton was convicted for the cover-up of Conspiracy and Obstruction of Justice when he had no "clearly established right" as determined by a jury to engage in this vehicle pursuit!

With all of these 301.03 Vehicle Pursuit Rules Broken by Sutton, if it was just one rule of Vehicle Pursuit Broken, that might be deemed an MPD Officer "oversight".  But with this overwhelming evidence of "deliberately" breaking all of these Rules of a G.O. 301.03, certainly there is at least one of the rules that would take this case out of the "qualified immunity" category – but Plaintiff argues that all of them do!  There is no way that a reasonable court could chalk this case off to qualified immunity when a jury of Sutton's peers found him to be guilty of Second Degree Murder beyond a "reasonable doubt" in violation of DC Code 22-2103.  This criminal finding of" beyond a reasonable doubt" supersedes and surpasses Sutton's Defense that he did not know what he was doing was wrong.   Sutton he knew or should have known what he was doing was wrong but was just doing it for the thrill of the chase and to impress his new officers being initiated into the Crime Suppression team, how "it is done in DC" and Sutton was

the best at doing it!  The fact that Sutton was leading a training exercise does not improve his fate.  It makes it far worse.  Sutton had "no clearly established right" to even commence to chase in his unmarked police car with a full dressed DC MPD directly behind him driven by his co-Conspirator!

Given all of these facts and arguments that were firmly established on October 23, 2020, and the G.O. 301.03 that was in effect since February 25, 2003, and Judge Friedman specifically excluded any legal arguments that did not refer to the District of Columbia's Second Degree Murder Statute, DC Code section 22-2103 and excluded any arguments of the Federal Reasonable Police standards, Officer Terrence Sutton's argument that he has access to the argument of Qualified Immunity because the law was not clearly established is fallacious and frivolous as the DC Code Statute for Second Degree Murder has been in effect for years.  It's not nuanced Federal Law, it's plain and simple DC law!

Sutton knew or should have known that the chase he engaged in broke numerous requirements listed in G.O. 301.03.  These rules against chasing have been well established since February 25, 2003.  If Sutton didn't know he was breaking the rules that were clearly established, that does not defeat the point that these rules were clearly established.  But Sutton was just showing off "how vehicle pursuits are done in DC" to his new trainees!  Thus, since these rules and requirements listed above were clearly established since 2003, Qualified Immunity is not available to Terrence Sutton.  At the criminal trial, there was testimony that G.O. 301.03 was  taught Sutton at the Police Academy.  One of the primary reason's extending his non-incarceration time is the fact that Sutton has not been sentenced.  That status will be revoked on September 11, 2024, when Hon. Paul Friedman sentences Terrence Sutton for

Second Degree Murder, Conspiracy and Obstruction of Justice.  Qualified Immunity is not

available to Terrence Sutton for the above reasons.


Submitted by:

_____/s/_____
David L. Shurtz, Esq.
1200 N. Nash Street, # 835
Arlington, VA  22209
(202) 617-9141

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to all of the parties by the Court's electronic services vehicles on this 5th day of September, 2024.


_____/s/_____
David L. Shurtz