# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

AMAALA JONES-BEY, individually :
and as personal representative of the :
Estate of Karon Hylton-Brown; :
:
      Plaintiff, and :
:
KAREN HYLTON, :
:
      Plaintiff Intervenor :
:
v. : Case No. 21-CV-02674-CJN
:
:
THE DISTRICT OF COLUMBIA; :
TERRENCE SUTTON, in his :
capacity; ANDREW ZABAVSKY, :
in his individual capacity; CARLOS :
TEJERA; in his individual capacity :
AHMED AL SHAWRI, in his :
Individual capacity; and CORY :
NOVICK, in his individual capacity :
:
      Defendants :
_____

**PLAINTIFF, AMAALA JONES BEY, RESPONSE TO DISTRICT OF COLUMBIA'S, DEFENDANT'S MOTION TO VACATE THE CRIMINAL TRIAL OF UNITED STATES v. TERENCE SUTTON AND ANDREW ZABAVSKY**

1

Perhaps, in one of the greatest moments of Judicial Hypocrisy, Fox 5 asked DC Mayor, Muriel Bowser, what her response to President Donald Trump's pardoning of Officers Terence Sutton and Andrew Zabavsky was. DC Mayor Bowser said:

**"President Trump pardoned two MPD officers involved in a fatal police pursuit.  While MPD has long believed that the unfortunate loss of life caused by this police pursuit was best addressed in MPD's administrative processes not a criminal one, we nonetheless accepted the jury verdicts."**

Judging from the instant Motion that was filed by the District of Columbia, the true intent of the District of Columbia is revealed, to use the pardon as a vehicle to attack not only the punishments for the crimes, but to vacate the criminal trial of Defendant's Andrew Zabavski and Terrence Sutton.

This city should be outraged when the District allows the President of the United States to control the results of a criminal case within the boundaries of the District of Columbia.  Donald Trump was not a party to the underlying case criminal case, he wasn't even an office holder when the Hon. Paul Friedman issued his final sentencing Order.  Notwithstanding the obvious contradiction between the Mayors statement and the District's action to vacate the criminal proceedings in *USA v. Sutton and Zabavsky*, cr 21-598,  Plaintiff has reviewed the case of *U.S. v. Schaffer*, 240 F. 3d 35 (D.C. Cir. 2001) and

2

joins the Memorandum Regarding Summary Judgment as filed by Plaintiff Intervenor Karen Hylton.

This leaves an unattended detail. At the time that the Plaintiff's and Plaintiff - Intervenor's, Motion for Summary based on Negligence was being considered, this Honorable Court put Plaintiff to terms stating that if Plaintiff wanted to proceed on the Negligence Motion for Summary Judgment, Plaintiff had to withdraw her Counts based on Failure to Train and Failure to Supervise as well as her Monell Count.

At the time, this Court was allowing the Negligence Count for Summary Judgment to go forward as this was the most expeditious vehicle to win a summary judgment as it carried with it the benefits of collateral estoppel because Sutton was convicted of Second Degree Murder. Clearly, if Sutton was convicted of second degree murder, these jury findings supporting second degree murder beyond a reasonable doubt would be sufficient to support a negligence claim by the preponderance of the evidence.

Since Plaintiff Intervenor already filed her Motion for Summary Judgment based on negligence, and negligence carried with it the benefits of collateral estoppel, it was in an expeditious moment that Plaintiff decided to proceed with the Plaintiff Intervenor's Motion for Summary Judgment based on Negligence. However, it appears that this court may be leaning towards eliminating the arguments of collateral estoppel by virtue of the fact that the

court may be relying on *U.S. v. Schaffer*, 240 F. 3d 35 (D.C. Cir. 2001) to vacate the *USA v. Terence Sutton and Andrew Zabavsky, cr- 598.* by rendering the criminal conviction moot.

If this court is inclined to render the *USA v. Terence Sutton and Andrew Zabavsky*, cr-598, as moot and eliminate the effects of collateral estoppel, Plaintiff moves to re-establish Plaintiff's counts of Failure to Train and Failure to Supervise; and Monell Claim back into its original place in the legal queue.

It is understandable for this court to focus on the most compelling legal arguments to justify collateral estoppel.  Plaintiff did not expect President Trump to pardon Officer's Sutton and Zabavsky out of the blue.  No care was taken by the Executive Branch to determine the character of Officer Sutton as it appears from the attached affidavits, Officer Sutton was a crooked cop. Exhibit 1.  Thus, if the USDC for DC is going to vacate the convictions of Terence Sutton and Andrew Zabavsky, Plaintiff moves to have Plaintiff's Failure to Train and Failure to Supervise and Monell Counts fully restored to Plaintiff's active Counts in this case.

While it is understandable that this Court would find that further discovery would be necessary to prove Plaintiff's Monell Claim; no further discovery is need to establish Partial Summary Judgment for Failure to Train and Failure to Supervise as this finding was independent of the underlying criminal jury verdict.  In Sutton's criminal trial wherein he was convicted of

second degree murder, Defendant Officers wanted access to the Assistant Chief of Internal Affair's Annual Vehicle Pursuit Reports for 5 years preceding the Karon Hylton-Brown collision on October 23, 2020. The Honorable Paul Friedman mandated the production of those Vehicle Pursuit Annual Reports described in G.O.301.03, February 25, 2003, VI. I. 3. John Knutsen, the Director of IAD produced an Affidavit conforming to the request of Hon. Paul Friedman. In that Knutsen Affidavit, it was clearly established, independent of any jury finding, that no annual vehicular pursuit report was ever written by the A/C of IAD for 5 years preceding the date of the Karon Hylton Brown "KHB" Collision, October 23, 2020. Exhibit 2. What appears to be a slick slide of hand is Knutsen's using the term "Compendium" to mean the compilation of Officer completed PD 845's and PD 150's forms. What Knutsen was saying, without directly saying it, is that no Field Officer or Supervisor ever wrote a PD 845 that was ever given a vehicle pursuit Complaint System "CS" report number by the A/C of IAD and stored as required with respect to G.O. 301.03, VI. I 1 – 3 protocols.

    The DC MPD has never properly taught a police officer the correct principles of G.O. Vehicle Pursuit 301.03. There is no contest, or objection that can be legitimately raised to refute this position. It cannot be refuted, based on the John Knutsen Affidavit that there was ever a police officer properly trained using the protocols of the 301.03 vehicle pursuit method. If

no DC MPD officers were ever trained pursuant to the G.O. 301.03 vehicle pursuit methods of training, this failure to train and supervise was clearly the result of the failure of the Chief of Police, to make sure that the annual reports were properly written.  It is more than pathetic oversight that the A/C of IAD never wrote an annual report. Exhibit 2.  Furthermore, if no Watch Commander ever filed and had his/her PD 150 stamped with a "CS" Number, there was no supervision of vehicle pursuit at the Watch Commander level. And, if there were no PD 845's signed by both the Field Supervisor and the Field Officer, and the PD 845 were never given Complaint System "CS" Numbers, no complete G.O. 301.03 training was ever provided at the Field Officer level.  It is not surprising that reckless vehicle pursuits by DC Police Officers like Sutton abound.

   And if these reports were never stamped, submitted and stored, pursuant to G.O. 301.03 VI. I 1 - 3, by the A/C of IAD and the Office of General Counsel never discharged their duty to make sure that the standards of G.O. 301.03 were complied with; then the entire system of G.O. 301.03, was abdicated by the Triad, i.e. the Chief of Police, the A/C of IAD and the Attorneys at the Office of General Counsel.  Thus, the DC MPD purported to appear to use the "Gold Standard" of the 301.03 Vehicle Pursuits but never did a single review with the Field Officer, the Field Supervisor, and the Watch Commander and the A/C of IAD never provided "Complaint System" "CS"

stamped numbers which conformed to the protocols of G.O. 301.03.  And finally the A/C of IAD never wrote the required annual report.  G.O. 301.03 VI. I  3.

The fact that the DC MPD purported to comply with G.O. 301.03 protocols and never did a single proper PD 845, PD 150 and IAD Annual Report, this conclusively proves that there never was a proper 301.03 investigation of a vehicle pursuit in the District of Columbia within the 5 years preceding 2020 and no doubt, much longer as there is no evidence that the DC MPD was ever in compliance with the protocols of G.O. 301.03 as reiterated by the John Knutsen Affidavit, Exhibit 2.

Thus, the DC MPD maintained a total cover-up from the Top of the Triad, i.e. by the Chief of Police, the Assistant Chief of Internal Affairs, and the lawyers of the Office of General Counsel.  This was an entire abdication by the Triad at the Top all the way down to the Field Officers.  The person who chased the bikers the hardest, Officer Terrence Sutton was the worst, not the best as he violated the specific rules of G.O. 301.03.  Perhaps Sutton felt that the harder he chased these bikers the better officer he was as the reverse was true.  The golden rule of G.O. 301.03 says in its first line, "When a member of the Metropolitan Police Department is engaged in  vehicular pursuit, the overriding responsibilities are the protection of human life and

property."  G.O. 301.03  seldom authorizes a chase and only when  the prevailing risk is less than the potential harm.

The John Knutsen affidavit sets forth facts independent of the trial of *USA v. Terence Sutton and Andrew Zabavsky*, even though it was produced during the trial.  This affidavit proves that there was never a single police officer properly taught by the DC MPD the proper protocols of G.O. 301.03.  Thus, Plaintiff's Partial Summary Judgment based on Failure to Train and Supervise is clearly established as previously filed by Plaintiff at docket entry 145.  It is Plaintiff's strong preference that if this Court denies Plaintiff Intervenor's Motion for Summary Judgment based on Negligence, that this court reconsider Plaintiff's Motion for Summary Judgment based on Failure to Train and Failure to Supervise set forth at docket entry 145.

There is overwhelming evidence, based on the John Knutsen affidavit that DC Police Officers were never trained in vehicle pursuits consistent with the mandated protocols of G.O. 301.03.  This is independent of the criminal trial of Sutton and Zabavsky.  If no police officers that work for the DC MPD were ever trained in the protocols of G.O. 301.03, DC's adopted standard, then there was a failure to train on a whole DC MPD wide basis.  This is why officers like Sutton chase motorbikes at high rates of speed and aren't held to account.

Even if this Court vacates the entire criminal trial of *USA v. Sutton and Zabavsky, cr. 598,* the Knutsen Affidavit still shines bright as the North Star in this litigation proving there was never any proper training using the G.O. 301.03 method to train DC Officers.  It was the lack of proper training that resulted in Sutton and Zabavksy unlawfully chasing of KHB by Sutton's Unmarked Police Car, chasing KHB when KHB committed no felonious act, chasing KHB for the traffic citation of chasing of failure to wear a police helmet'; Sutton and Zabavsky failing to stop for stop signs.  All of these protocols of 301.03 were violated because these officers were not properly trained by the MPD Triad.

This court does not need the conviction of Sutton for Second Degree Murder and Conspiracy and Obstruction of Justice to find Officers Sutton and Zabavsky liable for the instant collision based on the DC MPD's failure to train and supervise.   And it is not necessary to rely on Negligence to establish liability.    The only facts needed to prove Summary Judgment based on Failure to Train and Supervise is to rely on the Affidavit of John Knutsen. Sutton never completed a PD 845 related to this collision and his supervisor, Officer Zabavsky didn't sign it.  Sutton's vehicle pursuit was not even given a Complaint System "CS" Number.   The 3 tag along officers in Sutton's car failed to stop Sutton when Sutton was engaged in an unlawful pursuit.  Officer Zabavsky was at the chase from the beginning and he never should have

9

allowed this unmarked police car to chase KHB with 3 new Crime Suppression Team Officers in the unmarked police car that Sutton was driving.  While Zabavsky did leave the immediate chase, to head Sutton off at the pass, he was the authority that allowed the chase to proceed and continue as it did, breaking numerous G.O. 301.03 rules, e.g. don't chase for a traffic citation, G.O. 301.03 IV. F.  "Members are prohibited from pursuing a vehicle for the purpose of affecting a stop for a traffic violation."  V. "When approaching an intersection controlled by a stop sign, the operator of the vehicle shall stop before entering the intersection." VI. 6. "Members operating any of the below listed Department vehicles may initiate and continue a vehicle pursuit, until a marked unit joins the pursuit, at which time, the operators of the below listed vehicles shall immediately discontinue their participation."  VI. 10. "Conditions under which a vehicular pursuit shall be terminated include, but are not limited to the following: a. When it becomes apparent that the vehicular pursuit could lead to unnecessary property damage, injury to citizen(s) or member(s) of the Department.  B. The pursuit is in close proximity to school(s) and hospital(s) and other locations with high pedestrian or vehicular activity."

    E. The Field Supervisor shall: 9. "Ensure that PD Form 845 (Vehicle Pursuit Report) is completed by all involved members prior to the end of their tour and submit the completed report to the Watch Commander."

F. The Watch Commander shall: 1. Review the Vehicle Pursuit Report, to confirm that the provisions of this order were followed, Attach the report (PD 845) to the PD Form 150 (Watch Commander's Report). When the vehicular pursuits result in accidents with injuries or property damage, copies of all reports shall be forwarded through channels to the Office of General Counsel.

I. Office of Internal Affairs shall:

"1. Assign complaint system (CS) numbers to vehicular pursuit incidents and provide those numbers to the Communications supervisor or requesting official."

"3. Prepare an annual report relating the findings of Department vehicular pursuit investigations."

Because the Triad did not follow the protocols of G.O. 301.03, no one on the police force was properly trained in the protocols of G.O. 301.03.

No one bothered to file their PD 845 and PD 150's because it would show how inept DC Officers were in vehicle pursuit and how far they strayed from the standards set forth in G.O. 301. 03.. If these police officers filed their PD 845 as they were supposed to, then this would expose how badly these officers breached G.O.301.03.  Thus, the Triad intentionally failed to collect the PD 845's, PD 150's and Annual Reports as it would expose the DC MPD

as a corrupt organization, which it certainly is. DC MPD Triad honored the protocols of G.O. 301.03 more by their breach than their adherence.

Using the Knutsen Affidavit is the only thing necessary to prove Partial Summary Judgment for DC MPD's failure to Train and Supervise. It does not rely on the outcome of the Trial. The Knutsen Affidavit was required by Hon. Paul Friedman. It is obvious that the irregularities, and by the inexperience of all the officers including Officers Sutton and Zabavsky, that none of the officers were properly trained under the protocols of G.O. 301.03. Thus, Partial Summary Judgment is appropriate under Plaintiff's Failure to Train and Supervise Count that the Plaintiff is asking this Court to revisit.  It was once filed, now Plaintiff asks that it be reviewed again as it does not depend on the Trial of Sutton and Zabavsky for its proof; only the John Knutsen Affidavit and relying on Failure to Train and Supervise is not relying on collateral estoppel for its judgment.

In any event, when Plaintiff was presented with the option of going forward on the basis of Negligence, this Court informed Plaintiff's counsel that if he dropped out of the Negligence Count for unforeseen reasons, Plaintiff could reactivate Plaintiffs Counts for Failure to Train and Supervise and Monell. Plaintiff requests that this court reactivate Plaintiff's Counts for Failure to Train and Supervise and the Monell Claim and keep the Count for Negligence pending.

I ask for this:

_____/s/_____
David L. Shurtz
1200 N. Nash Street, # 835
Arlington, VA  22209
(202) 617-9141

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of the foregoing response to this Court's Query due on February 7, 2025, has been filed with this Honorable Court on February 7, 2025 with notice being served by this Court's mailing system.

_____/s/_____
David L. Shurtz